JAMES McGEE, Plaintiff in Error,

*v.*

STATE, Defendant in Error.

(*Nashville,* December Term, 1959.)

Opinion filed February 5, 1960.

CORDELL H. SLOAN, Memphis, for plaintiff in error.

WILLIAM D. GRUGETT, Assistant Attorney General, for the State.

Mr. Justice Swepston delivered the opinion of the Court.

The plaintiff in error, hereinafter referred to as defendant James McGee, was convicted for rape and sentenced to 99 years in the State Penitentiary. He has appealed and assigned four errors.

The third assignment goes to the preponderance of the evidence and will require a reference to same but before considering it, we shall dispose of the first two assignments.

The first assignment is that the court erred in allowing the State, over the objection and exception of counsel for defendant, to impeach the defendant's character by asking him about his conviction of another offense about nine months prior to the one herein for which he was indicted, and being tried, which prior conviction was pending on appeal to this Court; and which, *as alleged,* did not involve moral turpitude.

The second assignment is based upon the same thing and is in substance that the court erred in allowing the assistant attorney general to make reference, over defendant's objection, to another separate and distinct offense, to-wit, the conviction above mentioned.

These two assignments present the question of whether or not, assuming that the subsequent offense involves moral turpitude, it was competent on cross-examination to impeach the defendant's credibility by asking him about said prior conviction which was pending on appeal.

The great majority of state courts hold it to be admissible to show a prior conviction, even though a motion or an appeal to reverse same is pending. 58 Am.Jur., 402, Sec. 745.

There is a conflict among the federal courts to the extent that in *Campbell v. United States*, 1949, 85 U.S. App.D.C. 133, 176 F.2d 45, it was *Held,* that the correct interpretation of the District of Columbia Code required a ruling that only final convictions are competent for impeachment as to credibility; whereas, in the case of *United States v. Empire Packing Co.*, 7 Cir., 174 F.2d 16, it is *Held,* the question is proper even though the appeal be pending. Also *Fenwick v. United States,* 1958, 102 U.S.App.D.C. 212, 252 F.2d 124, especially note 3.

■ While certain valid arguments may be offered in opposition to the majority rule, we feel that for the sake of uniformity of the general law among the several states that we should rule in accordance with the majority holding and hence we hold that certainly the prior convictions are competent for the purpose stated.

The next question under this heading is whether or not the prior convictions involved moral turpitude. Defendant was indicted for assault to commit murder in the first degree and was found guilty of assault to commit murder in the second degree. Moral turpitude is defined in 58 Am.Jur., 401, Sec. 740, and 98 C.J.S. sec. 507, p. 407, under the heading of Witnesses.

■ This Court has adopted the accepted legal definition of the words "moral turpitude" appearing in 2 Bouv. Law Dict., Rawle's Third Revision p. 2247 as:

"An act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men or to society in general, contrary to the accepted rule or right and duty between man and man." *Brooks v. State,* 187 Tenn. 67, 76, 213 S.W.2d 7, 11.

It is, therefore, evident that moral turpitude can not be defined within definite boundaries but the definition given in American Jurisprudence in the section above referred to lends further light to the subject.

Some of the definitions found in the above texts are to the effect that moral turpitude is any offense which is *malum in se* and not merely *malum prohibitum,* regardless of whether prosecution may be brought therefor. In the note to C.J.S., supra, will be found a case holding that assault to murder involves moral turpitude under the rule in Alabama and this case cites the prior Alabama cases on the point. In 6 A.L.R. 1639-1641 are two cases holding that conviction for murder likewise involves moral turpitude. It is *Held* in *Curtis v. State,* 46 Tex.Cr. R. 480, 81 S.W. 29, that aggravated assault likewise involves moral turpitude, but in *Stewart v. State,* 100 Tex.Cr.R. 566, 272 S.W. 202, 203, which involved an aggravated assault upon a wife, the Court referred to the Curtis case, supra, and said:

"We are not called upon to decide whether an aggravated assault is in all cases a misdemeanor involving moral turpitude."

We are of opinion that an assault to murder may involve moral turpitude, depending upon the facts and *Posley v. State,* 199 Tenn. 608, 288 S.W.2d 455, does not hold to the contrary, as insisted by counsel for defendant.

■ The prior conviction in the instant case was for pistol-whipping another young girl, but fortunately for the defendant, the trial judge did not let the detail of that former conviction get to the jury; we think it evident from the record that if this fact had been known to the jury the penalty in all probability would have been death instead of 99 years. We are satisfied that the prior conviction in this case did involve moral turpitude and there was no error in permitting it to be inquired about in order to affect the defendant's credibility.

We accordingly overrule these first two assignments of error.

Now with reference to the preponderance of the evidence, the prosecutrix Elizabeth Ann Goforth, 16 years old and a high school student in Memphis at the time of this offense, on March 15, 1958, was on her way home at about 7:15 P.M., on a Saturday from a neighborhood store where she worked after school hours on certain weekdays and part time on Saturdays. She had ridden a public bus from the neighborhood store to a transfer point located in a populous section of the city. While waiting for the next bus, a man approached her on foot, stuck a gun in her side, made her walk around the corner and get in a Ford automobile and ordered her to do as he said. She was forced at first to sit on the floorboard with her head down and was kept in that position until he had driven out into the country. All the time he was threatening to kill her if she did not obey his commands. He drove up to a road gate that was the front entrance to a farm and residence and backed the car into the driveway up to the gate with the front of the car headed toward the road.

He then tried to kiss her and with her resisting all the time and with him threatening until eventually he forced her to climb over in the back seat and made her take her clothes off and did everything except to accomplish his purpose of criminally assaulting her, but was interrupted by the unexpected arrival of a tractor that had a light shining directly into his car. This proved to be two boys, one 15 and one 16 years of age.

As soon as he was able to pull away, he drove down the road and parked behind a church a considerable distance from the farm gate and there he criminally assaulted her. After that, he drove her to a point designated by her which was nearby her home where she was permitted to leave the car. She ran home and immediately told her mother what occurred and asked her to call the police. An investigation was started immediately and the police had this young girl present at several lineups at the police station where she was unable to identify any one of them as being the guilty person but she insisted all along that she could identify the guilty one. Finally, she did so on July 12, 1958, when the defendant was put in a lineup which was exhibited to her.

There is no question that this child was raped because the fact was verified that night as soon as her parents could take her to one of the hospitals for examination. In fact, no contention is made by the defendant to the contrary but he insists upon an alibi, so that identity was the important matter to be established in the minds of the jury.

The jury evidently believed the witnesses for the prosecution on this point and did not believe the alibi. In addition to this child's identification and the other

evidence in regard to his automobile, these two young boys testified. One of them testified that he got a good view of the defendant and he quickly identified him. He said he did not see the girl other than that she had long dark hair. The other boy on the tractor felt that this defendant was the man he saw that night but he was not as positive as the other boy. He did not see the girl at all on that occasion.

The alibi evidence consisted of testimony by the defendant, his wife, and several of his relatives.

As this Court has often said, the finding of a jury as to the credibility of witnesses is binding on it except perhaps under extraordinary circumstances.

We think that the evidence does not preponderate against the finding of the jury and the third assignment is accordingly overruled.

The fourth assignment complains that the court prejudiced the jury against counsel for defendant by allowing the assistant attorney general in the examination of witnesses and argument and conduct to lead the jury to believe counsel for defendant had conducted himself improperly in the preparation and trial of the case.

We have examined this record with the utmost interest and care by reason of the severity of the offense and punishment meted out by the jury. We find no merit whatever in counsel's fourth assignment and we think that counsel's criticism of the trial judge in this case is captious and wholly unwarranted. The trial judge evidenced a desire to see that accused received a fair trial. Nor do we feel that the criticism of the assistant attorney general is justified by this record.

Counsel for the accused was himself guilty of some conduct not conducive to an orderly and decorous trial, but the trial judge obviously realized that counsel's responsibility was heavy and so made allowance for same.

Accordingly all assignments are overruled and the judgment below is affirmed.