Ben F. JONES, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

May 4, 1978.

Certiorari Denied by Supreme Court
Aug. 28, 1978.

Edward G. Thompson, Shelby County Public Defender, Walker Gwinn, Chief Appellate Counsel, Public Defender's Office, Charles Burch, Asst. Public Defender, Memphis, for appellant.

Brooks McLemore, Jr., Atty. Gen., John F. Southworth, Jr., Asst. Atty. Gen., Nashville, Hugh W. Stanton, Jr., Dist. Atty. Gen., James D. Wilson, Michael W. Hughes, Asst. Dist. Attys. Gen., Memphis, for appellee.

OPINION

SAM L. LEWIS, Special Judge.

The defendant, Ben F. Jones, and Johnny Chalmers were indicted for the murder of Columbus Davis during the perpetration of a robbery. Chalmers was acquitted. Jones was convicted of second degree murder and sentenced to thirty (30) years. He has appealed from that conviction and assigns six (6) errors.

On August 10, 1975, between 11:00 and 11:30 p. m., DeAutry Brown, Cheryl Wheeler, and Columbus Davis were in Brown's apartment. Brown and Wheeler were in the bedroom watching television and Davis was in the living room. There was a knock at the front door, Davis answered it, and almost immediately shots were heard. When he heard the shots, Brown got his gun. He then heard furniture being kicked around and turned over in the living room. Some ten (10) to fifteen (15) seconds later Davis came into the hallway (between the living room and bedroom), he was holding his stomach and leaned leaned against the wall. Two men came in behind Davis and Brown fired his pistol in their direction, hitting Davis. The two men retreated into the living room. Brown then stuck his pistol around the door and fired again. One of the two men said, "Some one else is in here". They then ran from the apartment. Davis died within a few minutes.

Memphis Police Officer Larry Young and his partner, at approximately 11:30 p. m. on August 10, saw a Buick automobile run a stop sign. They pulled in behind the Buick and turned on their blue light in an attempt to stop it. The Buick continued a short distance, came to a stop for a red light, and the driver, Johnny Chalmers, after stopping, started moving through the intersection against the red light. The officers had trouble stopping the Buick as it started moving through the intersection. They were finally able to stop the car and, when they did so, the defendant, who was sitting on the passenger side, threw a 38-caliber and a 22-caliber pistol out the window. The officers, after stopping Chalmers and the defendant, learned the defendant had been shot in the stomach.

Without objection by this defendant, the officers testified that Chalmers told them he and Jones had gone to some dude's house to buy some reefers and when they opened the door this dude began shooting at them, hitting Jones in the stomach, that Jones began firing back into the house with a 22-caliber pistol, and that they had then run to their car and left.

DeAutry Brown testified that at the time of this occurrence he was dealing in marijuana.

Doctor Jerry Thomas Francisco testified that he performed an autopsy on the deceased. He found two gunshot wounds, both had entered the right chest; that the cause of death was "multiple gunshot wounds to the chest." He further testified that either of the wounds would have been sufficient by itself to have represented a cause of death but, having both wounds together in the same body, he was unable to distinguish between the lethality of either bullet taken separately; that neither bullet, taken by itself, would have caused instant death.

One of the bullets taken from the deceased's body was a 38 caliber and the other a 22 caliber.

The defendant first attacks the sufficiency of the convicting evidence, contending that by convicting him and acquitting his co-defendant, the verdict of the jury is inconsistent.

When two or more defendants are on trial the jury may convict one or more or acquit one or more and the jury's verdict need not demonstrate rational consistency. *Pulley v. State,* 506 S.W.2d 164 (Tenn.Cr. App.1973), *cert. denied, id.* (Tenn.1974).

He further contends that the evidence fails to disclose that he fired the fatal shot. It is his insistence that the cause of death was two (2) gunshot wounds and that the most severe of these wounds was from Brown's gun.

We discuss this contention along with his assignments of error two and three. By

assignment of error two, he complains that the trial court failed to charge his requested instruction, as follows:

"Where it is equally possible and probable that the death resulted from one cause as from another cause and the defendant is not responsible for one of the causes, then any determination of the cause of death can be only speculative and conjectural and the evidence will be held insufficient to support a verdict of guilty."

Assignment of error three goes to the trial court's failure to charge the following:

"The fact that a wounded person dies is not conclusive that death resulted from the wound; and the burden is on the prosecution to show beyond a reasonable doubt that such wound caused the death."

■ Every person will be held to contemplate and be responsible for the natural consequences of his own act; but he will not be held criminally responsible for a homicide, unless his act can be said to be the cause of death. *Fine v. State,* 193 Tenn. 422, 246 S.W.2d 70 (1952). The defendant herein set in motion the events that transpired in Brown's apartment. He set the stage and made Brown an unwilling actor. The shots Brown fired were precipitated by the defendant. The injuries inflicted upon Davis and his resulting death were a natural consequence of defendant's actions and, as such, he is responsible. *Odeneal v. State,* 128 Tenn. 60, 157 S.W. 419 (1913).

■ The tendered charges do not correctly state the law applicable to the facts of this case. The requested instructions would have called for a theory for which there are no facts. The trial judge is not required to charge theories not developed by the proof. *Reynolds v. State,* 210 Tenn. 310, 358 S.W.2d 320 (1962).

■ By his fourth assignment he complains that it was error to charge the jury that "it might consider flight of the defendant in determining his guilt." He does not complain of the phrasing of the instruction, only that the charge was not applicable to the facts. The evidence shows that the defendant and Chalmers "ran to the car and left", after determining "there is some one else in here". The circumstances surrounding their apprehension by the officers show an attempt to get away.

■ It is universally recognized that testimony as to flight, attempted flight, or concealment after the commission of an offense or after one is accused of a crime is relevant evidence which may be shown as a criminating circumstance, particularly where such conduct is apparently inconsistent with the idea of innocence. 22A C.J.S. *Criminal Law* § 625 (1961).

■ DeAutry Brown was indicted in a separate and unrelated occurrence for rape. Prior to Brown's testimony, the defendant, through his attorney, made it known to the court that for purposes of impeachment he wished to ask Brown "if he had raped Armanda Chase". He assigns as error the trial judge's refusal to allow the question. Tennessee has adopted Rule 608(b) and 609(a), (b) of the Federal Rules of Evidence. *See State v. Morgan,* 541 S.W.2d 385 (Tenn. 1976). The purpose of these rules is to permit an attack on the credibility of a witness by showing that he is a person of bad character generally. The act of rape is one which would evidence that the perpetrator is not a person who honors his private and social duties or his rights and duties between man and man. Rape is an act of baseness, vileness, and depravity. Rape is contrary to accepted standards of decency and morality. Whether a witness is guilty of rape does go to his truthfulness or untruthfulness as a witness.

■ We hold that it was error for the trial judge to refuse to allow the defendant to inquire of DeAutry Brown whether he had raped Armanda Chase. However, in view of all of the evidence we are satisfied that this error was harmless beyond a reasonable doubt and did not affect the results of the trial.

■ By his sixth, and last, assignment of error he says the trial court erred in holding the state could cross-examine the defendant about a recent jury conviction for the offense of armed robbery. He says

the trial judge's ruling prevented him from telling his side of the story. It is further his contention that to have allowed the state to inquire about this conviction would have far outweighed the legitimate probative value in attacking his credibility as a witness.

Rule 609(a) allows evidence of a conviction of a crime if the crime was punishable by death or imprisonment in excess of one year and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant. There was no abuse of the trial court's discretion.

It is further his contention that since a motion for a new trial was pending the robbery conviction would not be admissible.

A prior conviction is admissible even though a motion or an appeal to reverse the same is pending. *McGee v. State*, 206 Tenn. 230, 332 S.W.2d 507 (1960).

The judgment of the trial court is affirmed.

DUNCAN and TATUM, JJ., concur.