STATE of Tennessee, Appellee,

v.

Walter Lee CARUTHERS, Appellant.

Supreme Court of Tennessee,
at Knoxville.

Aug. 27, 1984.

E. Michael Ellis, Ellis & Associates, P.C., James W. Greenlee, Knoxville, for appellant.

John F. Southworth, Jr., Asst. Atty. Gen., William M. Leech, Jr., Atty. Gen. & Reporter, Nashville, for appellee.

OPINION

COOPER, Chief Justice.

This is a direct appeal of a death penalty case. Defendant, Walter Lee Caruthers, and Reginald Watkins were indicted on a charge of first degree murder in the death of Wilhelmina Stahl, two charges of aggravated kidnapping, two charges of armed robbery and for assault with intent to commit murder in the first degree causing bodily harm. Watkins was convicted of all charges except the charge of murder in the first degree. Caruthers was convicted of all charges. In a separate sentencing hearing on the first degree murder conviction, Caruthers was sentenced to death.[1] It is the murder conviction and sentence of death that is before this court on appeal. After a careful review of the record, we are of the opinion that no reversible error was committed in the trial, that the verdict and sentence are sustained by the evidence.

The events that were the bases of the several charges set forth in the indictment of Walter Lee Caruthers occurred on October 11, 1980. Wilhelmina Stahl and her brother George were hitch-hiking from New York to Georgia. On the afternoon of October 11th, in Columbus, Ohio, they accepted a ride from the defendant Walter Caruthers, who offered to take them to Knoxville, Tennessee, where he lived. Also riding in Caruthers' car was the co-defendant named in the indictment, Reginald Watkins.

George Stahl testified that when they reached Knoxville that night, Caruthers drove to a vacant lot. Watkins pulled a small silver pistol, told the Stahls that it was a robbery, and took George's wallet and Wilhelmina's purse. Caruthers opened the trunk of the automobile, and at gunpoint Watkins told the Stahls to get in. The automobile was driven to another location where Watkins and Caruthers took Wilhelmina out of the trunk. When Wilhelmina was put back into the trunk ten to

fifteen minutes later, she was hysterical and crying.

The car was driven to a gas station, then down a rough, bumpy road. After the car was stopped, Wilhelmina was told by Watkins to get out of the trunk. Caruthers was standing by Watkins. The men said they were going to tie the Stahls up. George was left in the trunk. He heard water splashing and Wilhelmina say, "Please, don't." George was then taken out of the trunk. Watkins hit him in the head and knocked him to the ground. Then, George said, he felt pressure as if someone had thrown a rock on his head. He jumped up, ran into the lake which was nearby, and swam out into the water. When the defendants' car left, George swam back to shore only to be found hiding in brush along the shoreline by Caruthers and Watkins, who had returned to search for him. Caruthers held George by the shoulders and told Watkins, "Cut his throat. He won't say nothing." Watkins repeatedly stabbed George in the throat with a knife. Both men then held him under the water until they thought he was dead. After they left, George made his way to a nearby road, where he was found and taken to the hospital. At the hospital, in addition to the stab wounds, doctors discovered George had been shot behind the left ear.

On a search of the area where George was found, Wilhelmina's body was located lying face down in shallow water near the lake shore. A large rock had been placed on top of her head. A red and white shirt was loosely wrapped around her neck. The autopsy showed that she had died from drowning. She had breathed so deeply that gravel had been drawn into her larynx and lungs. Sperm were found in her vagina.

Later that week police stopped Caruthers' wife in the car described by George Stahl. In the trunk they found a loaded

---

1. On the other conviction Caruthers and Watkins each received two life sentences for aggravated kidnapping, a life sentence for assault with intent to commit murder in the first degree with resulting bodily harm, and two sixty year sentences for armed robbery. The sentences were to be served consecutively.

nickel-plated .32 caliber pistol, from which one bullet had been fired. George Stahl's fingerprints were found inside the trunk. Hairs matching Wilhelmina's were found in the trunk and backseat of the car, which had been wiped clean. Caruthers was arrested soon thereafter, made a statement, and led the police to the place where the Stahls' clothing had been thrown out. Rebecca Thompson, one of Caruthers' girlfriends, testified that, when Caruthers and Watkins had come by her parents' home the day after the killing, Watkins was carrying some wet clothes, which he hung out to dry.

In defense Caruthers' wife testified that late in the evening of October 11, 1980, her husband and Watkins had come by her apartment. Watkins' clothes were wet, and he went through a bundle of clothing and a billfold. The defendant testified that the robbery was Watkins' idea, that Watkins raped and killed Wilhelmina and tried to kill George. The defendant said he went along with Watkins because he was afraid Watkins would shoot him. The defendant admitted convictions for armed robbery and interstate transportation of a stolen motor vehicle. Watkins' attorney asked the defendant about a prior incident (June, 1980) in which a young woman and her male companion had been kidnapped and assaulted. The defendant denied committing the crime. Michelle Cunningham, the young woman, who had been raped during the June, 1980, episode, then testified and identified the defendant as her attacker.

The co-defendant Watkins testified. He admitted owning the gun but claimed he was carrying it to protect himself from Caruthers. The robbery, Watkins testified, was originally Caruthers' idea, but he agreed to participate in it. He did not intend for anything else to happen, however. He admitted standing watch while Caruthers raped Wilhelmina, striking George in the head, and stabbing and attempting to drown George with the intent to kill him. Watkins testified that Caruthers insisted that the Stahls had to be killed to cover-up the robberies and rape. He claimed that Caruthers shot George in the head and drowned Wilhelmina. Watkins admitted prior convictions for aggravated robbery, carrying a concealed weapon, and petit theft.

In rebuttal the defendant introduced proof that he did not have a scar or tattoo such as those described by Michelle Cunningham in an earlier description of her assailant.

■ In his attack on the sufficiency of the convicting evidence, the defendant emphasizes that the only eyewitness to the drowning of Wilhelmina was Watkins, the co-defendant, who also was charged with the offense. Defendant also notes that during the criminal episode Watkins was carrying the gun and issuing orders to the Stahls. These were certainly matters to be argued to the jury. However, the jury accepted Watkins' version of events, not the defendant's version, and the proof is sufficient to convict the defendant under the standard prescribed in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and T.R.A.P. 13(e).

In the bifurcated sentencing phase of the trial, the jury found the following statutory aggravating circumstances:

A. The defendant was previously convicted of one or more felonies, other than the present charge, which involve the use or threat of violence to the person;

B. The murder was especially heinous, atrocious, or cruel in that it involved torture or depravity of mind;

C. The murder was committed for the purpose of avoiding, interfering with or preventing a lawful arrest or prosecution of the defendants or another;

D. The murder was committed while the defendant was engaged in committing, or was an accomplice in the commission of, or was attempting to commit, or was fleeing after committing or attempting to commit, any first degree murder, rape, robbery, larceny, kidnapping.

The jury also unanimously found that there "are no mitigating circumstances sufficiently substantial to outweigh the statu-

tory aggravating circumstances or circumstances so listed above," and fixed defendant's sentence for the murder of Wilhelmina Stahl as death by electrocution.

■ The evidence supports all aggravating circumstances found by the jury as well as the determination that mitigating factors did not outweigh the aggravating factors.

■ Defendant does complain of the introduction of a photograph of Wilhelmina Stahl during the sentencing phase of the trial. It shows a frontal view of the corpse soon after it was removed from the water. There is mud or gravel on the victim's face, but no blood or wounds are visible. The State argues that the photograph was relevant to show that the murder was especially heinous, atrocious or cruel in that it involved torture or depravity of mind. Actually the photograph adds little, if anything, to the verbal description of the killing of Wilhelmina Stahl and her fight for life. However, in light of the entire case, the introduction of the picture in evidence was harmless beyond a reasonable doubt.

The defendant insists that the method used by the Knox County Jury Commission to select the jury pool denied defendant a fair and impartial cross section of the community. The Commission selected prospective jurors solely from the lists of registered voters. The defendant argued that this excluded the class of those who are not registered to vote and introduced evidence, largely held incompetent and irrelevant by the court, to show that those who do not register to vote are less wealthy and less educated than those who do register and that over a quarter of the city population and almost one-third of the county population are not registered to vote.

■ The method used by the Commission has been impliedly approved by the Tennessee courts, see *Post v. State*, 580 S.W.2d 801, 804 (Tenn.Crim.App.1979), although it may be that the list should be

supplemented with some other source of names. *See Jefferson v. State*, 559 S.W.2d 649, 653 (Tenn.Crim.App.1977) (list of utility customers used to supplement voter list). In the federal system voter registration lists are the preferred method. *See* 28 U.S.C. §§ 1861–1866 (1966 & Supp.1984). Several federal cases approve the use of such lists in choosing juries and note that those complaining must still show that the method results in the systematic exclusion of a cognizable group from the jury source. *See e.g. Bryant v. Wainwright*, 686 F.2d 1373, 1378 (11th Cir.1982); *United States v. Maskeny*, 609 F.2d 183, 192 (5th Cir. 1980). The defendant here has shown no discrimination, either racial or sexual, by the Commission; in fact it is not even shown that any cognizable group has been excluded. *See United States v. Test*, 550 F.2d 577, 591 (10th Cir.1976) (stating test for determining what is a "cognizable group"). In *Test, supra* at n. 10, the court noted that voter registration lists provide a large and easily accessible source of names, to which all potential jurors have equal access and which disqualifies jurors solely on the basis of objective criteria. The defendant has not proved any constitutional invalidity in the method of jury selection in this case.

■ Defendant contends that the trial judge committed error in not permitting individual voir dire of prospective jurors. While collective voir dire was used, individual voir dire was permitted on issues of pretrial publicity and opposition to the death penalty whenever initial voir dire showed a possible problem in those areas. A similar procedure was approved in *State v. Melson*, 638 S.W.2d 342, 362 (Tenn.1982).

Defendant also complains of the excusal of juror McCombs for cause. Defendant insists that she met the *Witherspoon* standard and was a competent juror in a capital case. *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and its progeny[2] establish the general

---

**2.** *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Davis v. Georgia*, 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976); *Max-*

*well v. Bishop*, 398 U.S. 262, 90 S.Ct. 1578, 26 L.Ed.2d 221 (1970); *Boulden v. Holman*, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969).

proposition "that a juror may not be challenged for cause based on his views about capital punishment unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Adams v. Texas*, 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980). Where veniremen are excluded on "any broader basis ... the death sentence cannot be carried out even if applicable statutory or case law in the relevant jurisdiction would appear to support only a narrower ground of exclusion." *Witherspoon v. Illinois, supra,* at 522, n. 21, 88 S.Ct. at 1776 n. 21.

■ Mrs. McCombs testified she could not consider the death penalty but in response to defense counsel's questions indicated she would be able to "discuss the relative merits and demerits" of both punishments (life and death) with the other jurors should she be chosen to serve. In our opinion, the "discussing" of merits of various punishments is not the equivalent of "considering" it under the *Witherspoon* test in view of Mrs. McCombs' earlier, unequivocal statement that she could not consider the death penalty.

■ Defendant also takes issue with the trial court's refusal to try the first count of the indictment (the first degree murder charge) separately from the other counts. We see no error in the trial court's action. Rule 8(a) of the Tennessee Rules of Criminal Procedure provides that "Two or more offenses shall be joined ... if the offenses are based upon the same conduct or arise from the same criminal episode and if such offenses are known to the appropriate prosecuting official at the time of the return of the indictment(s) ... and if they are within the jurisdiction of a single court." Defendant argues severance is required "to promote a fair determination of the defendant's guilt or innocence of each offense" under Rule 14(b)(2)(i) of the Tennessee Rules of Criminal Procedure. All of the charges in the indictment were so closely related, several involving the same victim, that it would have been very difficult, if not impossible, to prove the murder charge without introducing proof of the other charges. *See Hemby v. State*, 589 S.W.2d 922, 928 (Tenn.Crim.App.1978); *McCook v. State*, 555 S.W.2d 411, 412 (Tenn.Crim.App. 1977).

■ Defendant insists that the trial court erred in not having the defendant undergo a psychiatric evaluation. Counsel filed a motion seeking to have a psychiatric evaluation of the defendant. The trial judge granted the motion and requested that defense counsel "call it to my office's attention, so that we can draw a petition." So far as the record shows, no further action was taken by counsel or by the court. The issue of defendant's sanity was never raised at trial nor was notice of the defense of insanity given as required by Rule 12.2 of the Tennessee Rules of Criminal Procedure. Under these circumstances, we see no error in the failure to have the defendant examined to determine his mental condition.

■ Defendant also questions the ruling of the trial court denying defendant the right to call Russ Dedrick, the prosecuting assistant district attorney general, as a witness. Defendant wished to call Dedrick to show that defendant had been truthful, cooperative, and helpful to police authorities while he was in custody. The same facts already had been testified to by Herman Johnson, a detective for the sheriff's department who, with Dedrick, had interviewed defendant. While a prosecuting attorney may testify at the court's discretion when necessary, *Bowman v. State*, 598 S.W.2d 809, 811 (Tenn.Crim.App.1980), Dedrick's testimony was cumulative and unnecessary and was properly excluded.

■ Defendant further contends that the trial judge erred in holding that defendant's prior conviction was admissible under *State v. Morgan*, 541 S.W.2d 385 (Tenn.1976), for impeachment purposes. Counsel for co-defendant Watkins impeached defendant by use of defendant's prior convictions for armed robbery in 1969 (sentence 10 to 25 years; released in 1974

and 1975) and for knowingly transporting a stolen vehicle in interstate commerce in violation of the Dyer Act in 1967 (sentence 5 years; released in 1969). Immediately after this proof was admitted, the court instructed the jury the crimes were to be used only for impeachment. Defendant complains that it was the co-defendant, who had not given notice of his intention to use the convictions, rather than the State, which had given notice, that used the convictions. Double notice would have been repetitious, and defendant has shown no prejudice. Both crimes have been found to involve dishonesty or false statement. *See State v. Martin*, 642 S.W.2d 720, 724 (Tenn.1982) (armed robbery); *State v. Baker*, 639 S.W.2d 670, 672 (Tenn.Crim.App. 1982) (Dyer Act). Despite the fact the Dyer Act conviction was over ten years old, the court held it admissible, its probative value outweighing its prejudicial effect. Convictions over ten years old have been held to be admissible where they show a continuing course of criminal conduct probative of credibility. *See Johnson v. State*, 596 S.W.2d 97, 104 (Tenn.Crim.App.1979); *see also* 3 Weinstein's Evidence § 609(07) (1982). It follows that no error was committed in admitting evidence of defendant's prior convictions.

■ Defendant also insists that the trial court erred in allowing co-defendant Watkins' attorney to question the defendant concerning a prior bad act. The record shows that on cross-examination, Watkins' attorney asked defendant if, in June 1980, he had picked up a girl named Michelle Cunningham and her male companion, driven them around, bought them some beer, taken them to a secluded area, put the man in the trunk and raped and severely beat the girl. The defendant answered "No" and no further questions were asked. The judge relied on *Jones v. State*, 580 S.W.2d 329, 332 (Tenn.Crim.App.1978) (guilt of rape goes to truthfulness of witness), in permitting these questions under *State v. Morgan*, 541 S.W.2d 385 (Tenn.1976). Taken together *Jones* and *Morgan* support the judge's ruling that the evidence of the prior bad act was admissible for impeachment purposes.

During the presentation of co-defendant Watkins' proof, Michelle Cunningham testified that a black man, identified as the defendant, picked up her and her male companion while she was at a telephone booth in Knoxville late at night on June 16, 1980. The three purchased some beer and, after driving around for a while, parked in a remote area of Knox County. The man then pulled a shotgun, put the male companion in the trunk of his car (which was blue in color like defendant's), raped Cunningham, tied her up, kicked her, and hit her numerous times with a tire jack. When Cunningham finished testifying the judge instructed the jury to consider her testimony only on defendant's credibility and on questions of intent, motive and common scheme or plan. The State had no part in the introduction of this evidence and did not examine either the defendant or Cunningham concerning the attack.

■ Generally, evidence of the commission of a crime by the accused other than that for which he is being tried is inadmissible. *See, Harrell v. State*, 593 S.W.2d 664 (Tenn.Crim.App.1980). However, such evidence is admissible if it is relevant to some issue at trial. *Collard v. State*, 526 S.W.2d 112 (Tenn.1975). In *Harrell v. State, supra*, as in this case, the defendant claimed he did not share his co-defendant's intent to commit robbery and had no knowledge a robbery was about to be committed although he admitted being present when the robbery was committed. Testimony showing commission of an armed robbery by the defendant and his co-defendant the day before was admitted to show defendant's intent and guilty knowledge. A similar exception regarding intent applies here and the evidence was properly admitted. *See also Thompson v. State*, 171 Tenn. 156, 101 S.W.2d 467, 473 (1937); 2 *Wigmore on Evidence* § 302 (Chadbourn Rev. 1979); Paine, *Tennessee Law of Evidence* § 5 (Supp.1981).

Defendant insists that the trial court abused its discretion in refusing to let San-

dra Hartsell testify in rebuttal of co-defendant Watkins' testimony.

Hartsell's testimony was that she met Watkins while he and the defendant were with Rebecca Thompson soon after the killing. Watkins had some "folding money" and told her he was returning to Columbus, Ohio, "to kill the people that had gotten his brother." Since Watkins admitted his participation in the robbery and receiving twenty dollars of the Stahls' money, the testimony about the "folding money" rebuts nothing. The testimony about returning to Ohio to kill the people who killed his brother was meant to rebut Watkins' protests that he didn't intend to kill either of the Stahls and that it "wasn't in me to shoot" George Stahl. We see no abuse of discretion in denying the rebuttal testimony. *See Wilson v. State*, 452 S.W.2d 355, 358 (Tenn.Crim.App.1969).

The defendant also insists the trial court erroneously instructed the jury on the weight to be given a confession. We see no error in the trial court's instructions. They were in accord with Tennessee Pattern Instructions—Criminal 37.08. Furthermore, the only person who confessed to a crime was the co-defendant Watkins. Consequently, the instruction on the weight to be given a confession could not prejudice the defendant.

The defendant argues that the trial court erred in the sentencing phase of the trial in not accepting the jury's initial report that it was unable to agree on punishment. On this issue, the record shows that after deliberating on the sentence for approximate three hours, the jury sent the court a note reading:

> No unanimous decision has been reached in our determining punishment for Walter Lee Caruthers. As of now the jury stands at eleven to one, with no foreseeable change. Please advise.

Over defendant's objection, the judge called the jury into open court and gave them the charge approved in *Kersey v. State*, 525 S.W.2d 139 (Tenn.1975). Just over two hours later the jury returned with a unanimous verdict of death by electrocution. The *Kersey* charge had been included in the jury instructions at the guilt phase but had not been included in the instructions given at the sentencing hearing.

Section 39–2–203(h), Tennessee Code Annotated, provides that if a jury in a capital case "cannot ultimately agree as to punishment, the judge shall dismiss the jury and ... shall impose a sentence of life imprisonment." The use of the adverb "untimately" indicates the Legislature anticipated a jury's tentative inability to agree on punishment. In such a case, the trial judge should exercise his discretion in determining whether there is an ultimate disagreement as to punishment. *See State v. Monroe*, 397 So.2d 1258, 1271 (La.1981) (under similar Louisiana statute the court is to determine when jury is deadlocked during capital sentencing and its decision will not be overturned except on a showing of palpable abuse of discretion). No such abuse is shown here nor is there any indication the instruction was coercive. *See also A.B.A. Standards Relating to Trial by Jury* §§ 5.4(b) and (c), which were approved in *State v. Kersey, supra.*

In the remaining issue, the defendant challenges the constitutionality of the Tennessee Death Penalty Act, admittedly for the purpose of preserving the issue for future appeal. All the arguments, however, have been reviewed by the court in past decisions, and there is no merit to them. The death penalty statute is constitutional. *Houston v. State*, 593 S.W.2d 267 (Tenn.1980), *cert. denied*, 449 U.S. 891, 101 S.Ct. 251, 66 L.Ed.2d 117 (1980); *State v. Melson*, 638 S.W.2d 342 (Tenn.1982); *State v. Simon*, 635 S.W.2d 498 (Tenn.1982).

The defendant's conviction of first degree murder and sentence of death are affirmed. The death sentence will be carried out as provided by law on the 9th day of November, 1984, unless stayed by appropriate authority. Costs are adjudged against the defendant.

FONES, HARBISON and DROWOTA, JJ., concur.

BROCK, J., concurs on all issues except the death penalty. *See* dissent in *State v. Dicks,* 615 S.W.2d 126, 132 (Tenn.1981).