# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs March 2, 2010

## STATE OF TENNESSEE v. RUSSELL LENOX HAMBLIN

### Direct Appeal from the Criminal Court for Davidson County
### No. 2007-B-1043      Steve Dozier, Judge

### No. M2008-02511-CCA-R3-CD - Filed October 29, 2010

The defendant, Russell Lenox Hamblin, was convicted of three counts of aggravated robbery and sentenced to ten years for each of the first two convictions and to twelve years for the third conviction. All the sentences were ordered to run consecutively, for a total effective sentence of thirty-two years. On appeal, he argues that: the evidence was insufficient to support his convictions; the trial court erred in admitting evidence of the sale and purchase of automobiles; the trial court abused its discretion in allowing his credibility to be impeached; and he was improperly sentenced. After careful review, we affirm the judgments from the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

Dumaka Shabazz (on appeal) and Lee Sprouse (at trial), Nashville, Tennessee, for the appellant, Russell Lenox Hamblin.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Pamela Sue Anderson, Assistant District Attorney General, for the appellee, State of Tennessee

## OPINION

The defendant was convicted of the aggravated robbery of a Chinese restaurant and a nail salon in Nashville. On December 26, 2006, the victims, Mr. and Mrs. Choy, the owners of the restaurant, were working alone. There were no customers in the restaurant when the defendant entered the establishment to pick up an order that cost two dollars. The defendant left but immediately returned and asked for some hot sauce. Mr. Choy went into

the kitchen to get some hot sauce while the defendant went into the restroom. The defendant sprayed Ms. Choy in the eye and entered the kitchen where he then sprayed Mr. Choy. Another man, Sedric Holt, entered the restaurant, pointed a gun at Mrs. Choy, and told Mr. Choy to lie on the floor. The defendant and Holt opened the cash register and removed all the money. The defendant was described by Mr. Choy as "the little one." The defendant asked if there was a safe or camera in the restaurant, and Mr. Choy told him that they had neither. The defendant instructed Holt to search the victim's pockets, where they found $4300 from Mr. Choy and $100 from Mrs. Choy. One of the robbers took Mrs. Choy's purse, and Holt took Mr. Choy's wallet and car keys.

After the robbers left, Mr. Choy went to the liquor store next door to call 9-1-1, because the robbers had taken the cord to the restaurant's phone. At that time, Mr. Choy noticed that his wife's car was gone. Mrs. Choy was in charge of making the deposits for the restaurant. Because she was working longer hours and was caring for a sick family member, Mrs. Choy did not make regular deposits from Thanksgiving through Christmas and, instead, kept the deposits in the trunk of her car. The victims did not know how much money was in the car when it was taken after the robbery.

Mr. Choy was taken to the hospital by ambulance because of the pepper spray in his eyes. After he showered that evening, he was again burned because the pepper spray in his hair ran into his eyes. He was unable to identify either of the robbers in the first photographic lineup but identified Holt in the second photographic lineup.

Eric Holt, a cousin of Sedric Holt, testified that he saw the defendant and Holt remove some bags from a green Honda automobile that he had not seen prior to the night of the robbery. He watched them remove the contents of the bags, which included money, credit cards, identification cards, and pictures of Asian-American children. He testified that the men threw the pictures and identification cards into a dumpster outside of the apartment. He said the total amount of money was $17,557. Eric Holt testified that the defendant and his cousin, Sedric, went shopping at the Hickory Hollow Mall and purchased clothes, an engagement ring for the defendant's girlfriend, and a truck with the money. The defendant bought some items for Eric, but he returned them because he was not a part of their gang.

Eric borrowed the green Honda from Sedric Holt. When he returned the car, Sedric informed him that it was stolen. Eric was upset because he knew his fingerprints were in the car and he did not want to go to jail. After his fingerprints were discovered in the car, Eric was questioned at school by a detective. Eric told the police about the defendant.

The victims recovered the Honda on the evening of January 3, 2007, after it had been found by the police. Their daughter noticed there was a cellular telephone in the car and

knew that her parents did not own a cellular telephone. She went through the phone and observed that it belonged to someone involved in the robbery.

Sedric Holt testified that he was eighteen years of age in 2006. He testified that he met the defendant in 2006. The defendant started dating his sister after Thanksgiving that year. He testified that, in November 2006, the defendant began saying they were a crime boss family and got a tattoo on his hands that said "Crime boss." His sister got a "CBF" tattoo. On December 26, 2006, Holt was riding with the defendant when they stopped at the House of Choy restaurant. He testified that he had taken some Ecstasy pills and smoked marijuana laced with cocaine two hours earlier. He put a gun in his pocket and walked into the restaurant with the defendant. The defendant ordered food and went to the restroom before spraying Mrs. Choy with mace.

Sedric Holt said he drew his gun and aimed it at Mr. Choy while ordering him to show his hands. After he watched the defendant spray mace in Mr. Choy's face, Holt looked for money. The victims told them that they did not have any money in the restaurant. The defendant told them that he did not want to hurt them; he only wanted money. Sedric Holt took a $100 bill from Mrs. Choy and the money in her pocket. The defendant told him to take the victim's keys, and he complied. When they left the victim's restaurant, the defendant told him to take Mrs. Choy's car. They sorted the stolen goods and determined that they had taken approximately seventeen thousand dollars. The defendant later made a down payment on a black Aztec truck with some of the money.

On the evening of January 12, 2007, Andy Dao, another victim, was working in his father's nail salon on Donelson Pike when two people, later identified as the defendant's girlfriend and Sedric Holt, entered the store. The defendant's girlfriend received a manicure while Sedric Holt paced in and out of the store. When the manicure was complete, Sedric Holt paid for the service. The victim heard her ask Holt, "Are you actually going to pay for this?" After they exited, Holt walked back inside and asked the victim for change for a ten-dollar bill. When the victim bent down to take out ten one-dollar bills, Holt displayed a gun and said, "stick it up." Holt then took a can of mace from his pocket and sprayed the victim. The victim was able to turn away to avoid the spray in the face. Holt took the store's money envelope which contained approximately five hundred dollars.

An eyewitness in the store testified that the defendant was not the man who robbed the store but did positively identify the defendant's girlfriend and his car. Holt testified that the defendant was driving the car, and both men were identified in a surveillance video from a neighboring restaurant.

Analysis

-3-

The defendant argues that the evidence was insufficient to support his conviction for aggravated robbery. When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Brewer*, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence. *Id.* In *State v. Grace*, the Tennessee Supreme Court stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982); *Grace*, 493 S.W.2d at 476.

Pursuant to Tennessee law, a person is criminally responsible for an offense committed by the conduct of another if "acting with intent to promote or assist the commission of the offense, or to the benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." T.C.A. § 39-11-402(2). A defendant's presence and companionship with the perpetrator of a felony before and after the commission of the offense are circumstances from which that defendant's participation in the crime may be inferred under a theory of criminal responsibility. *State v. Ball*, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998). No particular act need be shown, and the defendant need not have played a physical role in the crime in order to be held criminally responsible. *See State v. Caldwell*, 80 S.W.3d 31, 38 (Tenn. Crim. App. 2002). To be held criminally responsible for the acts of another, the defendant need only "associate himself with the venture, act with knowledge that the offense is to be

-4-

committed, and share in the criminal intent of the principal in the first degree." *State v. Maxey*, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994).

A conviction may not be based solely upon the uncorroborated testimony of an accomplice. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001) (citing *State v. Bigbee*, 885 S.W.2d 797, 803 (Tenn. 1994)). "An accomplice is one who knowingly, voluntarily, and with common intent unites with the principal offender in the commission of a crime." *State v. Allen*, 976 S.W.2d 661, 666 (Tenn. Crim. App. 1997). The general test is whether the accomplice would be indicted for the offense charged against the defendant. *Id.* There must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. *Shaw*, 37 S.W.3d at 903. The corroborative evidence need not be adequate in and of itself to support a conviction. *Id.* Generally, the jury determines whether sufficient corroboration exists. *Shaw*, 37 S.W.3d at 903.

Robbery is the intentional or knowing theft of property from another by violence or putting the person in fear. T.C.A. § 39-13-401. Aggravated robbery is a robbery accomplished with a deadly weapon. T.C.A. § 39-13-402(a)(1).

After reviewing the evidence in the light most favorable to the State, the record reflects that the defendant was criminally responsible for the aggravated robbery of the victims. His co-defendant, Sedric Holt, testified that the defendant suggested that they go to the victims' restaurant, where the defendant sprayed the victims with mace to incapacitate them. The defendant instructed his co-defendant to take the victims' car keys and, later, their car. He testified that they took seventeen thousand dollars in cash, which the defendant put in his pocket. When they went to the mall, the defendant purchased items with the stolen money. The defendant also purchased an automobile and a safe with the stolen money.

It is clear that co-defendant Sedric Holt was an accomplice with the defendant in the commission of the crimes. Therefore, it was necessary for the State to produce evidence corroborating the testimony of the co-defendant. Mr. Choy, one of the victims, corroborated the co-defendant's testimony regarding the events surrounding the robbery. He identified the co-defendant as the "bigger" man who used the gun in the robbery. The State also presented the testimony of Eric Holt, who stated that the defendant started the Crime Boss Family. On the night of the crimes, he observed the defendant and the co-defendant remove several bags from the trunk of a green Honda automobile. He watched them remove money and other items from the bags. He testified that the cash from the bags totaled $17,557. He saw the defendant pocket the money and then purchase clothes, a truck, and other items with the money.

Further, the State presented evidence that the defendant spent a lot of money immediately after the robbery of the restaurant. Police recovered a bill of sale that showed the defendant and his girlfriend paid $1700 in cash as a deposit for a black Aztec automobile on December 27, 2006, a day after the robbery. Other receipts included a $1500 paint job, $1000 in cash for tires, and $1250 for car stereo equipment purchased on December 28, 2006. The State presented sufficient evidence to support the defendant's conviction for the aggravated robbery of Mr. and Mrs. Choy.

The defendant was also convicted of the aggravated robbery of Mr. Dao for his actions in the robbery of the Angel Nails Salon on January 12, 2007. Sedric Holt, who was also involved in this robbery, drew his gun on this victim. Holt took a white folder from the counter and left the scene in a vehicle driven by the defendant. The State produced sufficient evidence in the form of a surveillance video and other witness testimony to corroborate Sedric Holt's testimony. The defendant and Holt took $500 from the nail salon. A witness testified that she saw the robber leave in a black automobile, and the jury heard evidence that the defendant drove a black automobile. From this evidence, the State produced evidence corroborating Sedric Holt's accomplice testimony, and a rational trier of fact could have found the defendant guilty of aggravated robbery of the victim, Mr. Dao.

Next, the defendant argues that the trial court erred when it admitted the bills of sale for a Lincoln Town Car and an Aztec, because they were not self-authenticating records of a regularly conducted activity. The State argues that the defendant has waived the issue because he failed to cite to the record pursuant to Tennessee Rules of Appellate Procedure 27(a)(7). This court will deem an issue waived when a defendant has failed to support an issue with argument, citation to authorities, or appropriate references to the record. *See* Tenn. Ct. Crim. App. R. 10(b). The defendant's brief is devoid of any reference to the record; therefore, this issue is waived.

Next, the defendant argues that the trial court erred in allowing his prior robbery conviction to be mentioned. The trial court concluded that the prior conviction was probative of the defendant's credibility and not outweighed by any unduly prejudicial effect. The State may use a prior adult conviction to impeach the testimony of an accused in a criminal prosecution if: (a) the conviction was for a crime that is punishable by death or imprisonment in excess of one year or a misdemeanor involving dishonesty or false statement; (b) less than ten years has elapsed between the date the accused was released from confinement and the commencement of the prosecution; (c) the State gives reasonable written notice of the particular conviction or convictions it intends to use to impeach the accused prior to trial; and (d) the trial court finds that the probative value of the felony or misdemeanor on the issue of credibility outweighs its unfair prejudicial effect on the substantive issues. Tenn. R. Evid. 609; *see State v. Mixon*, 983 S.W.2d 661, 674 (Tenn. 1999). On appeal, this court will

review the trial court's determination of this issue under the abuse of discretion standard. *See State v. Thompson*, 36 S.W.3d 102, 110 (Tenn. Crim. App. 2000).

The Tennessee Supreme Court has previously determined that robbery is a crime of dishonesty and is probative of credibility. *State v. Caruthers*, 676 S.W.2d 935, 941 (Tenn. 1984). This court has held that even if a prior conviction involves the same or similar crime for which the defendant is being tried, it does not automatically require its exclusion. *See State v. Baker*, 956 S.W.2d 8, 15 (Tenn. Crim. App. 1997); *State v. Miller*, 737 S.W.2d 556, 560 (Tenn. Crim. App. 1987). However, if "the prior conviction and instant offense are similar in nature the possible prejudicial effect increases greatly and should be more carefully scrutinized." *Long v. State*, 607 S.W.2d 482, 486 (Tenn. Crim. App. 1980). The trial court must analyze the prior conviction and the offense on trial to determine if the conviction's probative value on credibility is outweighed by the danger of unfair prejudice.

The defendant argues that the trial court's decision to admit evidence of the defendant's prior robbery conviction during his trial for robbery undermined the protections of the accused. However, this court has held that a trial court does not abuse its discretion when the defendant was on trial for aggravated robbery and the trial court concluded that a prior conviction for robbery was a crime of dishonesty and probative of the defendant's credibility. *See State v. Welcome*, 280 S.W.3d 215, 222-23 (Tenn. Crim. App. 2007). Just as in *Welcome*, the trial court in this case did not abuse its discretion. In the instant case, the trial court concluded that the evidence of the prior robbery conviction was probative of the defendant's credibility and was not outweighed by any unduly prejudicial effect; therefore, it did not abuse its discretion when it allowed the defendant to be impeached by his prior conviction. The record does not preponderate against this conclusion. The defendant discusses the proper procedure for introducing the evidence but does not argue that the State or trial court followed improper procedure for presenting his prior convictions. He merely concludes that this court should determine that any time a defendant has a prior conviction for the same offense for which he is on trial, the evidence of the prior conviction is always more prejudicial than the probative value of the knowledge of the crime. The defendant does not contend that the trial court failed to follow procedure but, instead, that the court drew an incorrect conclusion. As we have previously stated, the Tennessee Supreme Court has held that even if a prior conviction involves the same or similar crime for which the defendant is being tried, it does not automatically require its exclusion. The record reflects that the trial court conducted the proper inquiry; therefore, the defendant is not entitled to relief on this issue.

Next, the defendant argues that the trial court improperly imposed consecutive sentencing. A court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

(2) [t]he defendant is an offender whose record of criminal activity is extensive;

(4) [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high; or

(6) [t]he defendant is sentenced for an offense committed while on probation.

T.C.A.§ 40-35-115(b); *see also State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). Furthermore, in the event the trial court finds the defendant is a "dangerous offender," it must also determine whether the consecutive sentences (1) are reasonably related to the severity of the offenses committed; (2) serve to protect the public from further criminal conduct by the offender; and (3) are congruent with general principles of sentencing. *State v. Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995).

Here, the trial court found that the defendant had an extensive criminal history, that he committed the new crimes while on probation, and that he was a dangerous offender. We conclude that the record supports these findings because any of the three would justify the imposition of consecutive sentences. The presentence report shows that the defendant had fourteen prior convictions for non-traffic related offenses, including a robbery conviction in 2005, two convictions for unlawful possession of a weapon, two convictions for assault, and criminal impersonation. The defendant asks the court to consider only felonies under Tennessee Code Annotated section 40-35-115(b)(2), but does not cite to any authority that supports his argument. It is well settled that the trial court may consider misdemeanors in determining extensive criminal history. The record supports the trial court's finding that the defendant had an extensive history to justify imposing consecutive sentences.

The court also properly found that the defendant was on probation at the time he committed the underlying crimes. The defendant does not dispute this finding on appeal though, alone, it would support the imposition of consecutive sentencing. The presentence report shows that the defendant pled guilty to robbery in 2005 and received a five-year sentence of probation. The new offenses were committed in 2006 and 2007, during the period the defendant was on probation. Further, the record demonstrates that the defendant's probation was revoked on November 21, 2007, following a hearing because of the arrests in the underlying cases. The trial court properly imposed consecutive sentences after finding that the defendant committed the underlying crimes while he was on probation for the 2005 robbery conviction.

The defendant also argues that the trial court erred in determining he was a dangerous offender under Tennessee Code Annotated section 40-35-115(b)(4). He argues that there was no evidence that he actually possessed a gun and that the mace he used to subdue some of the victims did not cause serious bodily injury. The trial court applied this factor because the victims in the restaurant robbery were sprayed with mace and because the defendant's co-defendant employed a handgun during the commission of the offense. The trial court also considered that the victims in the restaurant were told that they did not have enough money which caused them further fear after the handgun had been brandished. The trial court found that the *Wilkerson* factors were satisfied in the imposition of the sentences because of the seriousness of the crimes and because the public needed to be protected from further serious criminal conduct by the defendant. *See Wilkerson,* 905 S.W.2d at 939.

We conclude that the imposition of consecutive sentences was proper. Any of the factors applied by the trial court were sufficient to sentence the defendant to consecutive sentences. Therefore, the defendant is not entitled to relief on this issue.

Conclusion

Based on the foregoing and the record as a whole, we affirm the judgments from the trial court.


_____
JOHN EVERETT WILLIAMS, JUDGE