# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
April 2000 Session

## STATE OF TENNESSEE v. DONALD MARBLEY

**Direct Consolidated Appeal from the Circuit Courts for
Lincoln County and Marshall County
Lincoln County Case No. S9800077; Marshall County Case No. 13600
Charles Lee, Judge**

---

**No. M1999-01212-CCA-R3-CD - Filed October 4, 2000**

---

In November 1997, the Defendant, Donald Marbley, was arrested for aggravated robbery in Lincoln County. Approximately two weeks after being released on bond, the Defendant was arrested in Marshall County for attempted aggravated robbery and aggravated assault. The Defendant was found guilty by a Lincoln County jury of aggravated robbery and sentenced to seventeen years as a Range II multiple offender. The Defendant pleaded guilty to the Marshall County attempted aggravated robbery charge and was sentenced to eight years as a Range II multiple offender. The two sentences were to be served consecutively, for a total sentence of twenty-five years as a Range II multiple offender. In this consolidated appeal, the Defendant raises the following issues: (1) whether the evidence was sufficient to support the Defendant's conviction for aggravated robbery in Lincoln County; (2) whether the Lincoln County trial court erred in admitting the Defendant's prior criminal convictions into evidence; (3) whether the trial court properly sentenced the Defendant in both the Lincoln and Marshall County cases; and (4) whether the Defendant received effective assistance of counsel in the Lincoln County case. Finding no error in the record, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH, J., and JOHN EVERETT WILLIAMS, J., joined.

Hershell D. Koger, Pulaski, Tennessee for the appellant, Donald Marbley.

Paul G. Summers, Attorney General and Reporter, Marvin S. Blair, Jr., Assistant Attorney General, W. Michael McCown, District Attorney General, Ann L. Filer, Assistant District Attorney General, and Weakley E. Barnard, Assistant District Attorney General for the appellee, State of Tennessee.

### OPINION

# I. Factual Background

## *A. Lincoln County Case*

Viewing the evidence in the light most favorable to the State, the Defendant, Donald Marbley, entered Parsley's Market #3 in Lincoln County around 9:00 p.m. on November 19, 1997 to buy some deli items. When Shannon Simmons Richardson, the clerk on duty that night, told the Defendant that the deli was closed, the Defendant went outside to put gas in his car. After filling his car with gas, the Defendant came back into the market and approached the counter where Richardson was standing. The Defendant opened his tri-fold wallet and appeared to be searching for money. Richardson realized that the Defendant did not have any money, so she told the Defendant that he could pay for the gas next time he was in town. Richardson asked for the Defendant's driver's license so she could get some information in case the Defendant needed to be reminded of his obligation to pay. Richardson checked to make sure that the picture on the license was the person at the counter and then wrote down the Defendant's name, address, driver's license number, and phone number.

The Defendant then said that he might have enough change to buy a bag of chips. Richardson took the Defendant's money for the chips and put it in the cash register. However, before Richardson was able to shut the register drawer, the Defendant pulled a knife from his pocket and lunged over the counter at Richardson. The Defendant grabbed some money from the open register drawer while Richardson attempted to activate the silent alarm. Richardson then fled to a beer cooler on the other side of the market to hide.

Soon thereafter, Johnny Church, a local businessman, walked into the market and realized that something was amiss. Church testified that the cash register was on its side and that there was gum and candy strewn all over the floor. Church found Richardson hiding in the beer cooler. Church testified that Richardson was very upset. Richardson and Church then called the police to report the robbery. Corporal George Jett of the Fayetteville Police Department responded to the call. At the time he got the dispatch, Jett had just arrived at the far end of the parking lot of Parsley's Market to do a routine check of the local businesses.

Richardson gave the police a description of the robber, as well as a description of the robber's car, knife, and wallet. Richardson also gave the police the sheet of paper with the Defendant's name, address, and phone number on it. That portion of the sheet of paper that contained the Defendant's driver's license number had been torn off.

According to the Defendant's wife, in the weeks prior to the robbery, she and the Defendant had been attending an eight-week adoption class in Fayetteville. Every Thursday the Defendant, his wife, and Diane Fields would stop at Parsley's Market on their way home to Columbia from the adoption class. They would usually arrive at the market around 9:00 p.m. Approximately a week before the last adoption class, and also approximately a week before the robbery, the Defendant and his wife began having some "problems," so the Defendant left home alone driving the couple's gold Saturn automobile. Ms. Marbley claims to have seen the Saturn at approximately 3:30 a.m. on the

morning of November 19, 1997 in Columbia. She testified that two young men were in the car, but she did not see the Defendant. Ms. Marbley reported the car stolen approximately thirty minutes before the Parsley Market robbery.

The Defendant testified that he had a "few hundred dollars" with him when he left home, which he ended up spending on crack cocaine in Columbia, Tennessee. The Defendant testified that he was on a crack cocaine "binge" during the week before the robbery and would frequently loan the gold Saturn out to people in exchange for drugs. He also testified that he was in Columbia, Tennessee at the time of the Parsley Market robbery.

In response to Ms. Marbley's stolen car report, Detective Roy Sellars of the Columbia Police Department seized the Marbleys' gold Saturn on November 20, 1997, the day after the robbery. At the time it was seized, the car was in the possession of two young men who claimed that the "registered owner" had loaned them the car in exchange for money. The two men informed police where they could find the Defendant.

The police found the Defendant at a known "crack house" in Columbia. After taking a box cutter and a knife from the Defendant for officer safety, the police escorted the Defendant to the Columbia Police Department to identify the gold Saturn and to corroborate the stories of the men who had been driving the car. At the police station, the Defendant surrendered his wallet and driver's license. The Defendant was then questioned in connection with the Parsley Market robbery. In a later interview with Detective Mike Hopson of the Fayetteville Police Department, the Defendant admitted that the wallet, driver's license and knife taken from him by the Columbia Police Department were his and had never been out of his possession. The Defendant was arrested for robbery on November 27, 1997 and released on bond two days later. A Lincoln County jury found the Defendant guilty of aggravated robbery.

### B. Marshall County Case

Approximately two weeks after the Parsley Market robbery, the Defendant attempted to rob Sandra Lombardo in a Wal-Mart parking lot. At the time of the offense, the Defendant was on bond for the Parsley Market robbery. Lombardo and two other witnesses were able to identify the Defendant from a police photo lineup.

The Defendant was indicted in Marshall County for attempted aggravated robbery against Lombardo, as well as aggravated assault against two other women. The Defendant entered into a plea agreement whereby he pleaded guilty to attempted aggravated robbery against Lombardo, and the two aggravated assault charges were dropped.

### C. Consolidated Sentencing

The Defendant was sentenced for his Lincoln County conviction and his Marshall County conviction at the same sentencing hearing. The Defendant was sentenced as a Range II multiple

offender to eight years for the attempted aggravated robbery conviction in Marshall County, and he was sentenced as a Range II multiple offender to seventeen years for the aggravated robbery conviction in Lincoln County. The sentences were to be served consecutively.

The Defendant now appeals his convictions, raising the following issues: (1) that the evidence was insufficient to support the Defendant's conviction for aggravated robbery in Lincoln County, (2) that the Lincoln County trial court erred in admitting the Defendant's prior criminal convictions into evidence, (3) that the trial court improperly sentenced the Defendant in both the Lincoln and Marshall County cases, and (4) that the Defendant received ineffective assistance of counsel in the Lincoln County case.

## II. Analysis

### *A. Lincoln County Case*

#### *1. Sufficiency of the Evidence*

The Defendant argues that the evidence presented in the Lincoln County case was insufficient to support his conviction for aggravated robbery. Specifically, the Defendant argues that he was "set up" by the clerk on duty at Parsley's Market when it was robbed. In this case, there was ample evidence for a rational jury to determine beyond a reasonable doubt that the Defendant was guilty of aggravated robbery.

Tennessee Code Annotated § 39-13-401 defines robbery as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). Aggravated robbery is "robbery as defined in § 39-13-401 . . . [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon . . . ." Id. § 39-13-402(a)(1).

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956); State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859.

On the contrary, this Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

The evidence presented at trial was certainly sufficient for a reasonable jury to find the Defendant guilty of aggravated robbery beyond a reasonable doubt. In addition to her two in-court identifications, the clerk on duty at the time of the robbery not only identified the Defendant from a police photo lineup, but she also was able to identify the Defendant's wallet, driver's license, and knife. The clerk had written down the Defendant's name, address, and phone number on a piece of paper before the robbery. The clerk testified that the Defendant came at her with the knife during the robbery and that she thought that she would be hurt or killed. Additionally, the Defendant admitted that the items that the clerk identified from the robbery had never been out of his possession. Finally, the Defendant's gold Saturn automobile fit the description that the clerk had given the police on the night of the robbery.

*2. Admission of Prior Criminal Convictions for Impeachment*

The Defendant argues that the Lincoln County trial court erred in allowing two of the Defendant's prior criminal convictions into evidence to impeach his credibility. The State had initially proposed that five prior criminal convictions be admitted into evidence to impeach the Defendant's credibility. After considering each conviction and balancing the probative value against the prejudicial impact of each prior conviction, the trial court allowed the State to introduce the Defendant's September 25, 1990 conviction for conspiracy to distribute cocaine and the Defendant's January 30, 1985 conviction for receiving stolen property.

The following requirements must be met before the credibility of a witness may be impeached with evidence of prior convictions: (1) The witness must be asked about the conviction on cross-examination; (2) the crime must be punishable by death or imprisonment in excess of one year, or the crime must have involved dishonesty or false statement; and (3) if the witness to be impeached is the accused in a criminal prosecution, the State must give the accused reasonable notice of the impeaching conviction before trial, and the court upon request must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. Tenn. R. Evid. 609(a)(1)-(3). In addition, when the current prosecution is commenced more than ten years after the date of release of the prior conviction sought to be used to impeach the witness, the prior conviction may not be used to impeach the witness unless the accused is given sufficient notice of the prosecution's intent to use such evidence and the court determines that the probative value of the evidence substantially outweighs any prejudicial effect. Tenn. R. Evid. 609(b).

In determining whether the probative value of a prior conviction on the issue of credibility outweighs its unfair prejudicial effect on the substantive issues, a trial court should assess the similarity between the pending prosecution and the underlying impeaching conviction, as well as the relevance of the impeaching conviction with respect to credibility. State v. Farmer, 841 S.W.2d 837, 839 (Tenn. Crim. App. 1992). The trial court must state its reasons for finding that the probative value of the prior conviction on the issue of credibility outweighs any prejudicial effect on the substantive evidence. Long v. State, 607 S.W.2d 482, 485 (Tenn. Crim. App. 1980). The trial court's decision to allow the prior convictions under Rule 609 will not be reversed on appeal unless the trial court abused its discretion. State v. Blanton, 926 S.W.2d 953, 960 (Tenn. Crim. App. 1996).

The Defendant argues that the trial court erred in admitting into evidence the Defendant's September 25, 1990 conviction for conspiracy to distribute cocaine because its probative value was not properly weighed against the prejudicial effect on the substantive evidence. The trial court weighed the probative value of the prior conviction against the prejudicial effect of the substantive evidence and concluded that the probative value outweighed any prejudicial effect. In addition, the nature of this prior conviction was dissimilar enough from the offense for which the Defendant was being tried that the likelihood of prejudice was diminished. On this issue, we find no abuse of discretion by the trial court.

The Defendant next argues that the trial court erred in admitting into evidence the Defendant's January 30, 1985 conviction for receiving stolen property. Specifically, the Defendant argues that the conviction falls outside the ten-year rule, which states that evidence of a prior conviction is inadmissible if a period of more than ten years has elapsed between the date of release from confinement and commencement of the current prosecution. However, this rule permits introduction into evidence of a conviction that would normally fall outside the ten-year time period if the probative value of the conviction, supported by specific facts and circumstances, substantially outweighs its prejudicial effect. Tenn. R. Evid. 609(b). The probative value of a conviction that falls outside the ten-year rule may substantially outweigh any prejudicial effect where a defendant's criminal record shows a continuing course of conduct that is probative of credibility. See State v. Caruthers, 676 S.W.2d 935, 941 (Tenn. 1984). The Defendant's 1985 conviction, as the trial court noted, is demonstrative of a continuing course of criminal activity by the Defendant. As for any prejudice to the Defendant, the prior conviction is dissimilar enough from the current offense that its prejudicial effect is minimal as compared to its probative value. Thus, the prior conviction was admissible to impeach the Defendant's credibility. Again, we find no abuse of discretion by the trial court.

*3. Ineffective Assistance of Counsel*

The Defendant argues that he received ineffective assistance of counsel during his Lincoln County trial. Specifically, the Defendant argues that his counsel during the Lincoln County trial failed in the following regards: (1) Counsel did not adequately investigate or prepare the case for trial, (2) counsel did not adequately review the case with the Defendant so as to effectively prepare the case for trial, (3) counsel failed to present the alibi defense of which the Defendant made counsel

aware, (4) counsel failed to effectively cross-examine the State's witnesses regarding inconsistencies in the proof, and (5) counsel did not file, argue or pursue a motion to suppress certain evidence presented at trial.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose 523 S.W.2d 930, 936 (Tenn. 1975). This right to representation includes the right to "reasonably effective" assistance. Burns, 6 S.W.3d at 461. The Tennessee Supreme Court has held that the issue of ineffective assistance of counsel is a mixed question of law and fact, and, as such, is subject to de novo review. Id.

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and that this performance prejudiced the defense, resulting in a failure to produce a reliable result. Id. at 687; Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993). To satisfy the requirement of prejudice, a petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Id. at 694; see also Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462. Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276, 280 (Tenn. Crim. App. 1980).

The Defendant argues that counsel in the Lincoln County case did not adequately investigate or prepare the case for trial. Specifically, the Defendant contends that counsel did not "significantly" discuss the trial strategy with him until October 9, 1997, six days prior to trial. However, the Defendant testified that he met with counsel on at least one prior occasion to discuss a potential alibi defense. Moreover, an investigator working with counsel at the Public Defender's office testified that he interviewed the Defendant on several occasions and that the resulting information was given to counsel. The Defendant has failed to show that counsel's trial preparation was inadequate. Even assuming that counsel's preparation was lacking, the Defendant has also failed to show any prejudice to his case.

The Defendant argues that counsel in the Lincoln County case failed to present an alibi defense as the Defendant requested. However, the evidence presented at the hearing on the motion for new trial showed that counsel and his investigator looked into the possibility of an alibi defense, but were unable to locate the "crack house" where the Defendant had been staying. This was due in part to the Defendant's own inability to provide counsel with the location of the house or the names of potential witnesses. In fact, the Defendant's new attorney stated at the hearing on the motion for new trial that he also had a great deal of difficulty in finding witnesses to substantiate the Defendant's alibi. The only witness that the Defendant's new counsel was able to locate for the motion for new trial, Burma Stovall Collins, a.k.a. "Scooter," was unable to verify the Defendant's whereabouts on the night of the robbery and merely testified that the Defendant had stayed at her house for awhile while the Defendant and his wife were having problems. We find that counsel provided effective assistance regarding the Defendant's potential alibi defense. Moreover, the Defendant has failed to show how any potential witnesses, such as Collins, would have changed the outcome of his case.

The Defendant argues that counsel failed to effectively cross-examine the State's witnesses regarding inconsistencies in the proof. Absent a showing that the trial attorney was uninformed because of inadequate preparation, cross-examination of witnesses is a strategic and tactical decision which is not to be measured by hindsight. State v. Kerley, 820 S.W.2d 753, 756 (Tenn. Crim. App. 1991); Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Aside from the Defendant's own testimony, no evidence was presented that counsel was not adequately prepared for trial. Further, there was no proof that the Defendant was prejudiced by the alleged inadequate cross-examination of witnesses.

The Defendant argues that counsel in the Lincoln County case provided ineffective assistance by failing to file a motion to suppress certain evidence presented at trial, including the Defendant's driver's license, a wallet and a knife. It is the Defendant's contention that these items were obtained as the result of an illegal search and seizure and thus should have been excluded as evidence. The State concedes that the Defendant was seized within the meaning of the Fourth Amendment; however, the State argues that it was a probable cause arrest and that the evidence was admissible. Because we find that the evidence obtained from the Defendant was the result of a lawful arrest, counsel's failure to file a motion to suppress does not amount to ineffective assistance of counsel.

The evidence presented at trial was admissible because it was the result of a lawful arrest of the Defendant by the Columbia Police Department. The Defendant was taken into custody on November 20, 1997 in connection with the discovery of the Defendant's reported stolen vehicle. On November 19, 1997, just thirty minutes before the robbery at Parsley's Market, the Defendant's wife reported the couple's gold Saturn missing. When the car was found, it was in the possession of two young men who claimed that the owner had loaned them the car. Although the two men did not know the name of the man that had loaned them the vehicle, they were able to give police the location where the man could be found. The address that the police were given was a known "crack house" in Columbia. Unclear as to the identity of the person that had loaned the two men the car, the police were still proceeding as if the car were stolen. This information gave the Columbia Police Department probable cause to arrest the Defendant. Officers who arrested the Defendant

immediately took the Defendant's knife for safety purposes. The Defendant's wallet and driver's license were taken from him once he arrived at the Columbia Police Department.

A police officer may make a warrantless arrest when the officer has reasonable cause to believe that the person being arrested committed a felony. Tenn. Code Ann. § 40-7-103(3). Although probable cause must be more than mere suspicion, it need not be a certainty. State v. Tays, 836 S.W.2d 596, 598-99 (Tenn. Crim. App. 1992). Probable cause consists of information that would lead a reasonable man to believe that the person arrested was guilty of the felony. Id. at 599.

The officer in this case had reasonable cause to believe that the Defendant had stolen a vehicle. Moreover, the car that was recovered had potentially been involved in the robbery at Parsley's Market in Lincoln County. As such, police were justified in making the arrest. Because the arrest was lawful, the evidence that was taken from the Defendant was lawfully taken and properly admitted at trial. Defense counsel was not deficient for failing to move to suppress evidence when counsel had no legal or factual basis for pursuing such a motion.

### B. Sentencing Issues Regarding Lincoln County and Marshall County Cases

The Defendant argues that the trial court improperly sentenced the Defendant in both the Lincoln County and Marshall County cases. Specifically, the Defendant argues that the trial court improperly applied and weighed certain enhancement factors and failed to apply appropriate mitigating factors. We disagree.

When an accused challenges the length, range, or manner of service of a sentence, the reviewing court must conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In the event that the record fails to show such consideration, the review of the sentence is purely de novo. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statement the defendant wishes to make in the defendant's own behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-210(a), (b), -103(5); State v. Williams, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

The presumptive sentence to be imposed by the trial court for a Class B, C, D or E felony is the minimum within the applicable range unless there are enhancement or mitigating factors present. Tenn. Code Ann. § 40-35-210(c). If there are enhancement or mitigating factors for a Class B, C, D or E felony, the court must start at the minimum sentence in the range, enhance the sentence as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors. Id. § 40-35-210(d), (e). The weight to be given each factor is left to the discretion of the trial judge. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). However, the sentence must be adequately supported by the record and comply with the purposes and principles of the 1989 Sentencing Reform Act. State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986).

When imposing a sentence, the trial court must make specific findings of fact on the record supporting the sentence. Tenn. Code Ann. § 40-35-209(c). The record should also include any enhancement or mitigating factors applied by the trial court. Id. § 40-35-210(f). Thus, if the trial court wishes to enhance a sentence, the court must state its reasons on the record. The purpose of recording the court's reasoning is to guarantee the preparation of a proper record for appellate review. State v. Ervin, 939 S.W.2d 581, 584 (Tenn. Crim. App. 1996). Because the record in this case indicates that the trial court adequately considered the enhancement and mitigating factors as well as the underlying facts, our review is de novo with a presumption of correctness.

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). The defendant bears the burden of showing the impropriety of the sentence imposed. Ashby, 823 S.W.2d at 169.

In sentencing the Defendant, the trial court applied the following enhancement factors in both the Lincoln and Marshall County cases:

(1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
. . .
(8) the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; [and]
. . .
(11) the felony resulted in death or bodily injury or involved the threat of death or bodily injury to another person, and the defendant has previously been convicted of a felony that resulted in death or bodily injury . . . .

Tenn. Code Ann. § 40-35-114(1), (8), (11).

The following additional enhancement factors were also applied in the Marshall County case: (9) "The defendant possessed or employed a firearm, explosive device or other deadly weapon during

the commission of the offense"; (13) the felony was committed while on bail, if the defendant is ultimately convicted of such prior felony; and (16) "[t]he crime was committed under circumstances under which the potential for bodily injury to a victim was great." Id. § 40-35-114(9), (13)(A), (16).

The following additional enhancement factor was applied to the Lincoln County case: (13) the felony was committed while on parole. Id. § 40-35-114(13)(B).

A total of six enhancement factors were applied in the Marshall County case, and a total of four enhancement factors were applied in the Lincoln County case. No mitigating factors were applied in either case.

The Defendant argues that Tennessee Code Annotated § 40-35-114(16) should not have been applied in the Marshall County case because it constituted a double enhancement. That provision is applicable where the crime is committed under circumstances under which the potential for bodily injury to a victim was great. The State concedes that Tennessee Code Annotated § 40-35-114(16) was misapplied in this case. We agree.

The Tennessee Criminal Sentencing Reform Act of 1989 provides that an enhancement factor may be applied to increase the defendant's sentence within the appropriate range if the factor is not an "essential element" of the offense. Id. § 40-35-114. "The test for determining if an enhancement factor is an essential element of an offense is whether the same proof necessary to establish the enhancement factor would also establish an element of the offense." State v. Bingham, 910 S.W.2d 448, 452 (Tenn. Crim. App. 1995).

Enhancement factor (16) requires that the risk or potential injury be "to a victim." Tenn. Code Ann. § 40-35-114(16). This Court has held "victim" to mean a victim of the charged offense rather than a potential victim, a victim of some collateral injury, or a victim of some uncharged offense. See State v. Charles Justin Osborne, No. 01C01-9806-CC-00246, 1999 WL 298220, at *3 (Tenn. Crim. App., Nashville, May 12, 1999); State v. Bingham, 910 S.W.2d 448, 452 (Tenn. Crim. App. 1995); State v. Joseph Oscar Price, III, No. 01C01-9810-CR-00421, 1999 WL 1063414, at *5 (Tenn. Crim. App., Nashville, Nov. 24, 1999).

In applying enhancement factor (16) in this case, the trial court focused on the potential harm to other people in the parking lot when the incident occurred. However, enhancement factor (16) may not be used on the basis of risk to others. Because we are unable to consider the potential harm to those other than the victim of the convicted offense, the proof necessary to establish enhancement factor (16) in this case would also establish an essential element of attempted aggravated robbery and violate Tennessee Code Annotated § 40-35-114. Therefore, we conclude that the trial court erred when it applied factor (16).

The Defendant next argues that the trial court erred in applying factor (11) to enhance both of his sentences. We disagree. This factor applies when "the felony resulted in death or bodily

-11-

injury or involved the threat of death or bodily injury to another person and the defendant has been previously convicted of a felony that resulted in death or bodily injury." Tenn. Code Ann. § 40-35-114(11). The focus of this provision is the offender's continuing pattern of violent criminal acts. It is clear that factor (11) applies in this case. At the time of the sentencing in this case, the Defendant had previously been convicted of a felony that resulted in bodily injury, and the offenses for which he was being sentenced involved the threat of death or bodily injury. This Court has previously held that factor (11) may be applied to the charge of especially aggravated robbery. See State v. Dustin Dwayne Davis, No. 03C01-9712-CR-00543, 1999 WL 135054, at *10 (Tenn. Crim. App., Knoxville, Mar. 15, 1999). We conclude that factor (11) would also apply to the lesser included offenses of aggravated robbery and attempted aggravated robbery. Therefore, we conclude that the trial court properly applied enhancement factor (11) in both the Lincoln County and Marshall County cases.

The Defendant also argues that the trial court erred by not considering any mitigating factors in either case. The Defendant sought to have the following mitigating factors considered by the trial court: (2) that "[t]he defendant acted under strong provocation" and (11) that "[t]he defendant, although guilty of a crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct." Tenn. Code Ann. § 40-35-113(2), (11). The Defendant argues that he was not in control of his actions when he committed the crimes because he was under the influence of cocaine and alcohol. However, the prolonged voluntary use of intoxicants will not mitigate criminal conduct committed while under the influence.

In light of the Defendant's extended criminal history and admitted drug use, the Defendant's claim that Tennessee Code Annotated §40-35-113(11) should apply is without merit. The Defendant admitted that most of the crimes that he had committed in the past were done while under the influence of drugs and alcohol; therefore, we find it hard to believe that the present offense was committed under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct. See id.

The Defendant's argument that he acted under strong provocation is also without merit. See Tenn. Code Ann. § 40-35-113(2). The Defendant's voluntary use of intoxicants is not the type of provocation that was intended by the statute. Thus, we find that the trial court properly ruled that mitigating factor (11) did not apply in this case.

Finally, the Defendant argues that the trial court did not properly weigh the enhancement and mitigating factors in determining the appropriate sentence. There is no evidence in this case that the trial judge abused his discretion in weighing the applicable enhancing and mitigating factors to sentence the Defendant. See Shelton, 854 S.W.2d at 123. Even absent the application of enhancement factor (16), the remaining enhancement factors and lack of mitigating factors more than justify the Defendant's sentence.

Accordingly, the judgment of the trial court is AFFIRMED.

_____

ROBERT W. WEDEMEYER, JUDGE