IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 2000 Session

**State of Tennessee v. David Wayne Salley**

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S40,026     Phyllis H. Miller, Judge**

_____

**No. E1999-00203-CCA-R3-CD**
**October 11, 2000**
_____

David Wayne Salley appeals from his conviction of aggravated rape. He raises issues related to sufficiency of the evidence, jury instructions on lesser-included offenses, admission of evidence obtained pursuant to search warrants, impeachment of the defendant with prior violent felony convictions, exclusion of evidence of consensual sexual relations with the then-minor victim 21 years before the crime, deficient notice that the state was seeking Range III classification for sentencing, and an excessive sentence. Because there is no error requiring reversal, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID G. HAYES and NORMA MCGEE OGLE, JJ., joined.

John B. Nisbet, III, Cookeville (on appeal), Stephen M. Wallace, District Public Defender, and Leslie S. Hale, Assistant District Public Defender (at trial), for the appellant, David Wayne Salley.

Paul G. Summers, Attorney General & Reporter, Mark A. Fulks, Assistant Attorney General, H. Greeley Wells, Jr., District Attorney General, Barry P. Staubus and Gregory A. Newman, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

The defendant, David Wayne Salley, stands convicted of aggravated rape following his trial before a jury of his peers in the Sullivan County Criminal Court. He is presently serving a Range III sentence of 60 years in the Department of Correction for his crime. In this direct appeal, he raises the following challenges to his conviction and sentence.

1.      Whether the evidence sufficiently supports the conviction.
2.      Whether the trial court properly instructed the jury on all methods of sexual penetration following the state's election to proceed on the theory of fellatio.

3. Whether the trial court erred in its jury charge wherein it listed attempted sexual battery two times in its list of aggravated rape and its lesser-included offenses.

4. Whether the trial court erred in instructing the jury to consider aggravated sexual battery, attempted aggravated sexual battery, sexual battery, and attempted sexual battery as lesser-included offenses.

5. Whether the trial court erred in failing to instruct the jury on aggravated assault, felony reckless endangerment, and misdemeanor reckless endangerment as lesser-included offenses.

6. Whether the trial court properly declined to suppress evidence seized pursuant to search warrants.

7. Whether the trial court properly allowed the state to impeach the defendant with his prior convictions of armed robbery.

8. Whether the trial court properly excluded evidence of an alleged consensual sexual encounter between the victim and the defendant 21 years earlier, when the victim was a minor.

9. Whether the trial court properly imposed a maximum, Range III sentence of 60 years.

We have reviewed the record, the briefs of the parties, and the applicable law, and we have considered the oral arguments of the parties. Because we discern no reversible error, we affirm.

In the light most favorable to the state, the evidence at trial established the following. On February 5, 1997, the victim and her live-in boyfriend went to the defendant's home. During the evening, the victim's brother, another individual and the defendant were present in the home with the victim and her boyfriend. Beer and marijuana were consumed. The victim and her boyfriend had a fight, and the boyfriend left. The other guests departed, and eventually, the victim and the defendant were alone together. They continued beer and marijuana consumption for a time.

Then, the defendant told the victim that he wanted to show her something in a bedroom. The victim walked into the bedroom, and the defendant followed. The victim felt a sharp blow to her shoulder. She turned and saw the defendant holding a machete. The two struggled, and the defendant forced the victim into another bedroom. Apparently superstitious, the victim pleaded with the defendant to take her into another room, as she had been told that there was an "evil spirit" in the room. The defendant took the victim back to the first bedroom, where he sexually penetrated her vaginally. However, the defendant was unable to obtain an erection and ordered the victim to fellate him. Still unable to obtain an erection, the defendant performed cunnilingus on the victim. Throughout these events, the defendant was holding the machete, and the victim had her hands on it in an attempt to keep the defendant from harming her with it.

Eventually, one of the victim's brothers and his girlfriend knocked on the door of the defendant's residence, and the victim convinced the defendant to go to the door. When the defendant opened the door, the victim escaped after scuffling with the defendant outside.

The victim received significant cuts to her hands requiring sutures as well as bruises on various parts of her body as a result of the incident.

To controvert the state's proof, the defendant testified that he had engaged in sexual relations with the victim, but the encounter had been consensual. He claimed that he promised to give the victim drugs in exchange for having sex with him, although he had no drugs to give her to uphold his end of the bargain. The defendant testified that after he had sex with the victim, he caught her going through his pants pockets. He claimed that he retrieved the machete and threatened to cut off the victim's hand if he ever caught her trying to steal from him again. According to his version of events, the victim panicked and grabbed the blade, cutting her hands. The victim threatened to tell her brothers that the defendant raped her, so the defendant made efforts to get her out of the house. He acknowledged that he had hit the victim with the flat side of the machete blade to get her to leave. He tried to take the victim outside and put her in the garage so that he would have time to leave the area, but she got away from him. Finally, the defendant testified about two prior occasions in 1993 or 1994 and 1996 on which he and the victim had engaged in consensual sexual relations.

Upon consideration of this evidence, the jury accredited the state's evidence and returned a guilty verdict on the charged offense of aggravated rape. Thereafter, the trial court sentenced the defendant, a Range III offender, to a maximum, 60-year term. This appeal followed.

**I**

First, we consider Salley's challenge to the sufficiency of the convicting evidence. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). On the contrary, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. Cabbage, 571 S.W.2d at 835.

The defendant was convicted of aggravated rape, which in pertinent part is the "unlawful sexual penetration of a victim by the defendant . . . accompanied by . . . [t]he defendant caus[ing] bodily injury to the victim . . . ." See Tenn. Code Ann. § 39-13-502(a)(2) (1997). The defendant contends that the state's case is fatally insufficient to support the conviction because of the conflicting nature of the testimony between the victim and the defendant. In other words, the defendant would have us reweigh the evidence and substitute our own conclusion for that of the jury who heard and saw the witnesses. As explained above, our review is limited to the inquiry whether a rational jury could reach the verdict based upon the evidence of record. In the present case, the jury accepted the victim's version of events in which she described facts supporting a verdict of aggravated rape and rejected the defendant's claim of consensual sex followed by a physical altercation when the victim attempted to steal from the defendant. Such was within the jury's province as trier of fact. Upon review, we hold that a rational jury could find the defendant guilty of aggravated rape on the evidence of record. Accordingly, the defendant's claim of insufficient evidence must fail.

## II

Next, the defendant claims that the trial court improperly instructed the jury on all the methods of sexual penetration[1] following the state's election to proceed on the theory of fellatio. According to the defendant, the instruction confused the jury and created a question about the unanimity of the verdict in that the verdict does not reflect whether all jurors agreed on one mode by which the defendant committed the crime.

In pertinent part, the record reflects that the court gave the following instruction on the crime of aggravated rape.

Any person who commits the offense of aggravated rape is guilty of a crime.

For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:
(1)     that the defendant had *unlawful sexual penetration* of the alleged victim or the alleged victim had *unlawful sexual penetration* of the defendant; and
(2)     that the defendant caused bodily injury to the alleged victim; and
(3)     that the defendant acted either intentionally, knowingly or recklessly.

*"Unlawful sexual penetration"* means *sexual intercourse, cunnilingus, fellatio, anal intercourse or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the alleged victim's, the defendant's*

_____

[1]To be precise, the defendant alleges that the trial court improperly instructed the jury on "all three definitions of sexual penetration." However, the definition of "unlawful sexual penetration" given by the trial court contained five categories of unlawful sexual penetration: (1) sexual intercourse, (2) cunnilingus, (3) fellatio, (4) anal intercourse, and (5) any other intrusion. The court further instructed on the definitions of "cunnilingus" and "fellatio."

*or any other person's body, accomplished without the consent of the victim*; emission of semen is not required.

*"Cunnilingus" means a sex act accomplished by placing the mouth or tongue on or in the vagina of another.*

*"Fellatio" means a sex act accomplished with the male sex organ and the mouth of another.*

(Emphasis added.) Before this portion of the charge was read, the trial court instructed the jury twice that to support a finding of guilt on aggravated rape or a lesser-included offense, the state must prove sexual penetration by fellatio. This election instruction was given during the defendant's case-in-chief and again during the final charge to the jury.[2]

A criminal accused is entitled to a complete and correct charge of the law, State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990), including the law governing the issues raised by the evidence. State v. Zirkle, 910 S.W.2d 874, 892 (Tenn. Crim. App. 1995). In his brief, the defendant has failed to cite any authority which supports the proposition that the charge given was erroneous. He asserts only generally that the trial court has a duty to give a correct charge of the law. We see no error. The trial court gave a correct exposition of the law. The court gave a full definition of the term "unlawful sexual penetration" and instructed the jury that it could find the defendant guilty only if it found evidence of guilt beyond a reasonable doubt of unlawful sexual penetration by fellatio. The jury is presumed to follow the instructions it has been given. State v. Williams, 977 S.W.2d 101, 106 (Tenn. 1998).

We reject the defendant's claim that the charge was confusing. To be sure, we believe that an incomplete definition of "unlawful sexual penetration" would have been more likely to confuse the jury than the complete definition that was given.

On the question of unanimity, the defendant's cursory argument, which is devoid of citation supporting his claim, is insufficient, and we treat it as waived. See Tenn. R. App. P. 27(a)(7), (h); Tenn. R. Ct. Crim. App. 10(b).

Nevertheless, if the issue were properly before us, we would reject it. We disagree with the defendant that the multiple definitions of the modes of committing "unlawful sexual penetration" created a unanimity problem. As discussed above, the challenged aspect of the charge was a clear, concise and correct statement of the law, and the jury was instructed to find guilt only if the state proved unlawful sexual penetration *by fellatio* beyond a reasonable doubt.

---

[2] The first instruction, given prior to the defendant's testimony, was as follows. "All right, members of the jury, the Court has required the State to elect the particular type of sexual penetration on which they rely on the charge against the Defendant in this case. The State has elected to rely on sexual penetration by fellatio." The second instruction, given during the final charge, was in accord with Tennessee Pattern Instruction - Criminal 43.02.

An enhanced unanimity instruction is generally required when the state presents evidence from which different facts could be used to support a conviction, as where the statute provides multiple modes of committing an offense and more than one mode is demonstrated by the evidence. See State v. Forbes, 918 S.W.2d 431, 446 (Tenn. Crim. App. 1995) ("Where there is technically one offense, but evidence of multiple acts which would constitute the offense, a defendant is still entitled to the protection of unanimity . . . ."); State v. Brown, 823 S.W.2d 576, 583 (Tenn. Crim. App. 1991) (enhanced unanimity instruction required whether multiple acts committed by defendant, each of which would amount to commission of the charged offense). In this case, though, there was no real potential for a non-unanimous verdict. Both the victim and the defendant testified that the sexual acts involved were vaginal intercourse, fellatio and cunnilingus. The victim testified that the acts were not consensual; the defendant testified that they were. In other words, that the defendant and the victim engaged in sexual penetration involving fellatio was not a contested issue. Rather, the issue for the jury was whether this act was consensual. In this situation where the act of fellatio was conceded by the defense and elected by the state, there was no viable potential for some or all of the jurors to find guilt based upon the other acts of sexual penetration in evidence, as opposed to the single incident of fellatio. As such, no enhanced unanimity instruction was required. Accord State v. James Clayton Young, Jr., No. 01C01-9605-CC-00208, slip op. at 10-11 (Tenn. Crim. App., Nashville, May 22, 1998) (Witt, J., concurring and dissenting on other grounds); Brown, 823 S.W.2d at 584 ("In a case where the evidence shows that the defense is, simply, a denial that any offense occurred and that the evidence in favor of the state's position is of a similar quality as to each offense proven and is derived from the same witness(es), then it is extremely difficult to imagine that a potential exists of the jury splitting its findings. Such a clear cut case would not seem to call for an augmented unanimity instruction, since the accrediting of the witnesses as to one offense would necessarily accredit them as to the others."). Thus, we perceive no error in the manner in which the jury was instructed.

Finally, even if an enhanced unanimity instruction were required, the failure to give it in this case would be harmless beyond a reasonable doubt based upon the contested issue being consent, as opposed to the type of sexual penetration that occurred. See State v. Shelton, 851 S.W.2d 134, 138 (Tenn. 1993) (harmless beyond reasonable doubt standard).

**III**

The defendant also complains of error in the trial court's listing of aggravated rape and the lesser-included offenses because attempted sexual battery was included twice in this litany. Near the beginning of the charge, the trial court instructed the jury that Count One embraced the offenses of "Aggravated rape[, a]ttempt to commit aggravated rape[, r]rape[, a]ttempt to commit rape[, *a]ttempt to commit sexual battery*[, a]ttempt to commit aggravated sexual battery[, s]exual battery[, *a]ttempt to commit sexual battery*[, a]ssault causing bodily injury." (Emphasis added.) The trial court then defined the crimes in the following order: aggravated rape, attempted aggravated rape, rape, attempted rape, aggravated sexual battery, attempted aggravated sexual battery, sexual battery, attempted sexual battery, and assault causing bodily injury. In the portion of the charge in which the offenses were defined, the jury was instructed to consider the offenses in sequential order.

That is, the jury was to consider the next-lesser offense only if it reached a verdict of not guilty on the greater offense then under consideration.

This issue was not raised in the motion for new trial and is therefore waived.[3] See Tenn. R. App. P. 3(e) ("no issue presented for review shall be predicated upon error in . . . jury instructions granted or refused . . . unless the same was *specifically* stated in a motion for new trial") (emphasis added). Further, the defendant cites no authority in support of his claim that the trial court's misstatement of the offenses in the initial listing is reversible error. This is a second basis for waiver. See Tenn. R. App. P. 27(a)(7), (h); Tenn. R. Ct. Crim. App. 10(b).

Even if the issue were properly before us, we would find it without merit. We acknowledge that the trial court appears to have misspoken in giving its initial listing of the offenses. However, the subsequent, in-depth instructions combined with the instruction to consider the offenses sequentially cured any risk of confusion. Even if we were to consider this error, we fail to see how it prejudiced the defendant. The jury found the defendant guilty of the charged offense of aggravated rape and therefore never proceeded through the sequence of the lesser-included offenses. Cf. State v. Williams, 977 S.W.2d 101 (Tenn. 1998) (failure to instruct on lesser offense of voluntary manslaughter was harmless where jury found defendant guilty of charged offense of first degree murder, thereby declining to find defendant guilty of intermediate lesser offense of second degree murder).

## IV

Next, the defendant alleges that the trial court erred in instructing the jury to consider aggravated sexual battery, attempted aggravated sexual battery, sexual battery and attempted sexual battery as lesser-included offenses of the charged offense of aggravated rape accompanied by bodily injury.

At the outset, we are compelled to observe that the defendant has not explained and we do not comprehend how the defendant could have been harmed by any instructional error of this nature. The defendant was convicted of the charged offense of aggravated rape. We do not see how instruction on non-applicable lesser-included offenses could have prejudiced him.

Notwithstanding, this is an evolving area of the law, and we will endeavor to address briefly the merits of the defendant's issue. Our supreme court has recently adopted the following framework for defining lesser-included offenses.

An offense is a lesser-included offense if:

---

[3]The motion for new trial alleges several specific errors in the jury instructions, none of which reaches this point. The only issue stated in the motion for new trial which might arguably apply is "That the Court erred in giving the jury certain other instructions." However, this issue was not expounded upon at the hearing on the motion for new trial, and it is too vague to have offered the trial court an opportunity to rule upon it in any meaningful fashion. Motion for new trial issues raising instructional error must *specifically* state the alleged error. Tenn. R. App. P. 3(e).

(a) all of its statutory elements are included within the statutory elements of the offense charged; or

(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
> (1) a different mental state indicating a lesser kind of culpability; and/or
> (2) a less serious harm or risk of harm to the same person, property or public interest; or

(c) it consists of
> (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
> (2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
> (3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

State v. Burns, 6 S.W.3d 453, 466-67 (Tenn. 1999).

The state has questioned whether Burns should apply retroactively. We hold that Burns applies to this case. See State v. Billy Joe Stokes, — S.W.3d —, No. M1997-00083-SC-R11-CD (Tenn. July 5, 2000) (Burns applied to determine lesser-included offense in case which was in appellate pipeline prior to release of supreme court's Burns opinion); State v. Billy Joe Stokes, No. 01C01-9710-CC-00442 (Tenn. Crim. App., Nashville, Jan. 19, 1999) (intermediate court decision predates supreme court's Burns decision); see also State v. Jumbo Kuri, No. M1999-00638-CCA-R3-CD, slip op. at 5 (Tenn. Crim. App., Nashville, May 25, 2000) (Burns has been applied too many times for its retroactive effect to cases on direct appeal to be seriously questioned).

Turning, then, to the merits of the issue, we hold that Burns mandates that aggravated sexual battery and sexual battery are lesser-included offenses of aggravated rape accompanied by bodily injury. See State v. Gary J. Greer, No. 01C01-9808-CR-00337, slip op. at 11-13 (Tenn. Crim. App., Nashville, Mar. 17, 2000) (aggravated sexual battery by force or coercion is lesser-included offense of aggravated rape by force or coercion under Burns (b)(1)); cf. State v. Douglas Bryan Boruff, No. E1999-00274-CCA-R3-CD, slip op. at 7 (Tenn. Crim. App., Knoxville, Mar. 17, 2000) (aggravated sexual battery is lesser-included offense of rape of a child under Burns (b) and possibly Burns (a)); id. (concurring opinion of Woodall, J.) (aggravated sexual battery is a lesser-included offense of rape of a child under Burns (b) but not (a)); id. (concurring opinion of Witt, J.) (aggravated sexual battery is a lesser-included offense of rape of a child under Burns (a) and (b)); State v. Robbie James, No. M2000-00304-CCA-RM-CD, slip op. at 6 (Tenn. Crim. App., Nashville, Mar. 20, 2000) (aggravated sexual battery committed on child less than thirteen years old is lesser-

included offense of rape of a child under <u>Burns</u> (b); <u>id</u>. (concurring opinion of Witt, J.) (aggravated sexual battery and sexual battery are lesser-included offenses of rape of a child under <u>Burns</u> (a)). <u>But see</u> <u>Timothy R. Bowles v. State</u>, No. 01C01-9711-CR-00547, slip op. at 15 (Tenn. Crim. App., Nashville, Apr. 20, 1999) (pre-<u>Burns</u> ruling that sexual battery is not a lesser-included offense of aggravated rape), <u>perm. app. granted</u> (Tenn. Feb. 22, 2000).

Because aggravated sexual battery and attempted sexual battery are lesser-included offenses, the attempts of those crimes are likewise lesser-included offenses under <u>Burns</u> (c)(2). <u>See</u> <u>Burns</u>, 6 S.W.3d at 467.

The inquiry does not end with a determination that these offenses are, in fact, lesser-included offenses of the charged offense. Next, we must determine whether the evidence of record justified the submission of these lesser-included offenses to the jury. <u>See</u> <u>Burns</u>, 6 S.W.3d at 467. In this regard, the supreme court has recently said, "The mere existence of a lesser offense to a charged offense is not sufficient alone to warrant a charge on that offense. Whether or not a particular lesser-included offense should be charged to the jury depends on whether proof in the record would support the lesser charge." <u>Id</u>. at 468. In determining whether the offense should be charged, the trial court must engage in a two-part inquiry. First, it "must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense." <u>Id</u>. at 469. Such determination is made by examining the evidence in the light most favorable to the existence of the lesser-included offense. <u>Id</u>. Then, "the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense." <u>Id</u>.

When the proof of the lesser-included offense is solely a portion of the evidence supporting the existence of the greater offense, as opposed to the evidence of the lesser being an alternative explanation for what occurred, we have held that the trial court is not obliged to give the lesser-included offense instruction. In this situation, there is no evidence of the lesser offense *other than* the very same evidence which supports the greater offense, that is, "that reasonable minds could accept as to the lesser-included offense."[4] <u>See</u> <u>State v. Terry T. Lewis</u>, No. M1999-00876-CCA-MR3-CD, slip op. at 20 (Tenn. Crim. App., Nashville, Mar. 17, 2000); <u>see generally</u> <u>Burns</u>, 6 S.W.3d at 469.

As charged in this case, aggravated rape is "unlawful sexual penetration of a victim by the defendant . . . accompanied by . . . [t]he defendant caus[ing] bodily injury to the victim . . .

---

[4]For example, in this case, an alternative explanation for the events constituting the state's evidence of aggravated rape would be presented if there was conflicting evidence about whether the victim suffered bodily injury. In that case, the jury's determination of whether there was bodily injury would be pertinent to the question of whether the crime committed was aggravated rape, which requires bodily injury, or the lesser-included offense of rape, which does not.

." See Tenn. Code Ann. § 39-13-502(a)(2) (1997). The only issue was consent.[5] With consent being the only issue, examination of the facts reveals that there was no evidence that reasonable minds could accept as to the existence of the lesser-included offenses of aggravated sexual battery, attempted aggravated sexual battery, sexual battery and attempted sexual battery, as opposed to the greater offense of aggravated rape. Having so determined, we are not required to consider the second part of the Burns inquiry, whether "the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense." Burns, 6 S.W.3d at 469. Thus, we conclude that the trial court was not required to instruct the jury on the lesser-included offenses of aggravated sexual battery, attempted aggravated sexual battery, sexual battery, and attempted sexual battery.

Nonetheless, as we discussed above, we fail to see how the defendant was harmed by the unnecessary inclusion of these offenses in the lesser-included offense litany. Accordingly, he is entitled to no relief from his conviction on this basis.

**V**

The defendant also alleges that the trial court failed to instruct the jury on aggravated assault, felony reckless endangerment and misdemeanor reckless endangerment as lesser-included offenses of aggravated rape.

We begin by noting that aggravated assault may be a Class C or D felony, felony reckless endangerment is a Class E felony, and misdemeanor reckless endangerment is a Class A misdemeanor. See Tenn. Code Ann. § 39-13-102(d) (Supp. 1999) (aggravated assault); § 39-13-103(b) (1997) (reckless endangerment). In this case, the jury convicted the defendant of the Class A felony of aggravated rape, even though they were also instructed on the lesser-included Class B felonies of attempted aggravated rape, rape and aggravated sexual battery, which are intermediate-class offenses between aggravated rape and the offenses the defendant claims should have been instructed. Because the jury found the defendant guilty of the charged offense and eschewed the intermediate lesser-included offenses, the defendant cannot have been harmed even if he is correct that these additional offenses should have been charged. See State v. Williams, 977 S.W.2d 101 (Tenn. 1998).

As with the previous issue, however, we will address the merits of the issues presented.

---

[5]One might argue that a corollary issue was whether the victim's bodily injury was sustained in the course of a sex crime or in a disagreement following a consensual encounter. However, on the facts of this case, that issue is necessarily resolved by the determination of whether the encounter was consensual.

## A. Aggravated assault

As relevant to this case, aggravated assault is an intentional, knowing or reckless assault in which the defendant causes serious bodily injury to the victim. See Tenn. Code Ann. § 39-13-102(a) (Supp. 1999).

Aggravated assault is not a lesser-included offense of aggravated rape under Burns (a). The defendant was charged with aggravated rape inflicting bodily injury; aggravated assault as relevant here requires *serious* bodily injury. Thus, the elements of aggravated assault are not included within the offense of aggravated rape, thereby precluding application of Burns (a).

Aggravated assault will be a lesser-included offense of aggravated rape under Burns (b) if its additional element establishes "a different mental state indicating a lesser kind of culpability" or a "less serious harm or risk of harm to the same person, property or public interest . . . ." Burns, 6 S.W.3d at 466-67. The elements of aggravated assault satisfy neither requirement. The additional element of aggravated assault does not indicate a lesser degree of culpability. Further, aggravated assault involves *serious* bodily injury, a more serious harm than the charged offense of aggravated rape, which only requires bodily injury. Compare Tenn. Code Ann. § 39-11-106(a)(2) (1997) (bodily injury definition) with Tenn. Code Ann. § 39-11-106(a)(34) (1997) (serious bodily injury definition).

Likewise, Burns (c) is clearly inapplicable, as the issue at hand does not involve facilitation, attempt or solicitation.

Aggravated assault is not a lesser-included offense of aggravated rape in this case, and the trial court did not err in failing to instruct the jury on this offense as lesser-included within the charged offense.[6]

## B. Reckless Endangerment

Reckless endangerment occurs where the defendant "recklessly engages in conduct which places or may place [the victim] in imminent danger of death or serious bodily injury." Tenn. Code Ann. § 39-13-103(a) (1997). If the offense is committed with a deadly weapon, it is felony reckless endangerment; if no weapon is involved, it is misdemeanor reckless endangerment. Tenn. Code Ann. § 39-13-103(b) (1997).

Reckless endangerment requires that the victim be in imminent danger of death or serious bodily injury, and aggravated rape as charged in the indictment does not include this element. Burns (a) does not apply. Likewise, felony reckless endangerment requires a weapon, and

---

[6]The trial court instructed the jury on the lesser-included offense of simple assault, and no appellate issue is raised regarding the propriety of this instruction.

aggravated rape as charged in the indictment does not. For this additional reason, Burns (a) does not apply to make felony reckless endangerment a lesser-included offense of aggravated rape.

In applying the test of Burns (b), we must consider whether reckless endangerment embodies "a different mental state indicating a lesser kind of culpability" or a "less serious harm or risk of harm to the same person, property or public interest" than that embodied in the crime of aggravated rape accompanied by bodily injury. See Burns, 6 S.W.3d at 466-67. In that regard, reckless endangerment does not involve relatively less culpability than does aggravated rape. Further, upon consideration of the act of recklessly engaging in conduct which actually or potentially places another in imminent danger of death or serious bodily injury as compared to the infliction of actual bodily injury, it is not clear that the legislature intended to proscribe a less serious harm or risk of harm in the former than that which it proscribed by the latter. Thus, under Burns (b), reckless endangerment does not qualify as a lesser-included offense of aggravated rape accompanied by bodily injury.

Neither felony nor misdemeanor reckless endangerment are lesser-included offenses under Burns (c), which is reserved for attempts, solicitations and facilitation.

The defendant is not entitled to appellate relief on this issue.

## VI

Next, we consider whether the trial court properly admitted evidence seized pursuant to search warrants. When this issue was litigated in the trial court, the defendant alleged that the search and resultant seizures were illegal for the following reasons:

(1)     Copies of the warrants were not given to the defendant or left at his residence by the searching officer as required by Tennessee Rule of Criminal Procedure 41(d);
(2)     The "officers return" was not executed on the warrant and the items seized were not taken before the issuing judge;
(3)     Some of the items seized were irrelevant to the crime;
(4)     No scientific analysis was performed on some items seized, and
(5)     The second search warrant was based upon insufficient probable cause.

On appeal, the defendant contends for the first time that the fruits of the searches should be suppressed because the magistrate failed to cause a copy of the return and inventory to be delivered to the defendant.

We begin by restating the well-settled principle that a party may not advance one theory for the inadmissibility of evidence in the trial court and another on appeal. See, e.g., State v. Aucoin, 756 S.W.2d 705, 715 (Tenn. Crim. App. 1988). To do so, as the defendant has done here, results in waiver of the issue. Id.

-12-

Moreover, Rule 41(d) provides that the magistrate issuing a search warrant "shall, *upon request*, cause to be delivered a copy of the return and the inventory to the person from whom or from whose premises the property was taken . . . ." Tenn. R. Crim. P. 41(d) (emphasis added). In the present case, however, the record is devoid of evidence that the defendant made such request of the issuing magistrate. Even if this issue were properly before us, we would find it without merit.

## VII

The next issue we consider is whether the trial court properly allowed the state to impeach the defendant with his prior convictions of armed robbery.

Subject to certain conditions for admissibility, Tennessee Rule of Evidence 609 authorizes the use of proof of a witness's prior convictions in order to attack a witness's credibility. Tenn. R. Evid. 609(a). The prior conviction must be for a felony or a crime involving dishonesty or false statement. Tenn. R. Evid. 609(a)(2). To be eligible as an impeaching conviction, a prior felony conviction need not involve dishonesty. However, when the witness to be impeached is the criminal defendant, the state must give notice prior to trial of its intent to utilize the conviction for impeachment purposes, Tenn. R. Evid. 609(a)(3), and upon request, the court must determine the admissibility of an eligible conviction by deciding whether "the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues." Id. In making this determination, "two criteria are especially relevant." State v. Mixon, 983 S.W.2d 661, 674 (Tenn. 1999). First, the court must "analyze the relevance the impeaching conviction has to the issue of credibility" and "explain [the relevance] on the record," id., and second, it must, "assess the similarity between the crime on trial and the crime underlying the impeaching conviction." Id. (quoting Cohen, Sheppeard & Paine, Tennessee Law of Evidence § 609.9 at 376 (3d ed. 1995)).

If the conviction is remote, that is, if more than ten years have elapsed from the date of release from confinement or from the date of conviction if no confinement was involved, the prior conviction is generally not admissible to impeach the defendant. Tenn. R. Evid. 609(b). A remote conviction may be admissible, though, where the adverse party gives advance notice of intent to use the conviction, and the court determines that in the interests of justice the conviction's probative value is substantially outweighed by its prejudicial effect. Id.

On appellate review, the trial court's rulings on the admissibility of prior convictions for impeachment purposes are subject to reversal only for abuse of discretion. See, e.g., Mixon, 983 S.W.2d at 674.

In the case at bar, the record is not a model of clarity. It appears that the defendant had two armed robbery convictions imposed on two separate dates in 1977 and a third imposed in 1978. He served a 25-year sentence concurrently to a fifteen-year sentence for two of the convictions, and he served a fifteen-year sentence consecutively to the first fifteen-year sentence. The record does not reflect exact sentence expiration dates or release from confinement dates that correspond with each of the three prior convictions. We glean from the record that one of the

sentences expired on October 8, 1985. The defendant was released from confinement in 1991, violated parole, and was ultimately released in 1992.

Because at least one of the convictions involves a sentence that expired more than ten years ago, we must analyze whether the probative value of the convictions on credibility *substantially* outweighs the danger of unfair prejudice on the substantive issues. See Tenn. R. Evid. 609(b); State v. Dee W. Thompson, No. M1998-00073-CCA-R3-CD, slip op. at 13-14 (Tenn. Crim. App., Nashville, Mar. 17, 2000) (in case of consecutive sentences that are not simultaneously imposed, "release from confinement date" for convictions other than final one in consecutive sentencing structure is the sentence expiration date, not the final date of release at end of incarceration for all sentences).

Armed robbery is a violent offense in that it involves the use of a weapon to accomplish theft from the person. Tenn. Code Ann. § 39-3901 (1975) (repealed 1989). "Felonies of a violent nature reflect on the moral character of a witness[, and] . . . this evidence is not usually without probative value." State v. Blanton, 926 S.W.2d 953, 960 (Tenn. Crim. App. 1996) (quoting State v. Daniel Strong, No. 88-82-III (Tenn. Crim. App., Nashville, Apr. 12, 1989), perm. app. denied (Tenn. 1989)). But see Long v. State, 607 S.W.2d 482, 485-86 (Tenn. Crim. App.) (violent or assaultive crimes may result from causes which have "little or no direct bearing on honesty or veracity").

The state's evidence in this case depicted a violent aggravated rape. The defendant wielded a machete, and the victim received significant injuries as a result. Thus, there is a palpable danger of unfair prejudice due to the violent nature of the present offense and the defendant's prior convictions. On the other hand, however, the crime of robbery is one involving dishonesty, which has a direct and substantial bearing on the issue of credibility. See, e.g., State v. Caruthers, 676 S.W.2d 935, 941 (Tenn. 1984) (robbery is a crime which has "been found to involve dishonesty or false statement"). When the dishonest nature of the crime of robbery is coupled with the bearing on credibility inherent in felonies of a violent nature, these factors substantially outweigh the danger of unfair prejudice to the defendant due to any similarity of armed robbery and aggravated rape. Id. (approving impeachment with convictions "over ten years old" of robbery and transporting stolen vehicle in interstate commerce, crimes that have "been found to involve dishonesty or false statement"). As such, the trial court did not abuse its discretion in ruling that the defendant could be impeached with prior armed robbery conviction(s) for which he had been released for more than ten years. Moreover, because the balancing test for convictions less than ten years old is less stringent than the one for older convictions, our conclusion with respect to the older conviction(s) is determinative for the conviction(s) with a release date within the ten years prior to commencement of the instant prosecution, as well.

# VIII

The defendant also raises the trial court's exclusion of evidence of an alleged consensual sexual encounter between the victim and the defendant 21 years earlier, when the victim was a minor.

Generally, evidence of a sex crime victim's sexual behavior is inadmissible in a prosecution of the victim's alleged sexual perpetrator. See generally Tenn. R. Evid. 412. However, certain exceptions apply. Among them is the exception for prior sexual behavior between the victim and the accused, if offered to support a defense of consent. See Tenn. R. Evid. 412(c)(3). For such evidence to be admissible, the defendant must first file and serve a written motion to offer such evidence no later than ten days before trial is scheduled to begin. Tenn. R. Evid. 412(d)(1). Such motion must contain a written offer of proof of the specific evidence and the defendant's purpose in introducing it. Id. The court must then hold a closed hearing to determine if it will allow admission of the evidence by balancing the probative value of the evidence with its unfair prejudice to the victim. Tenn. R. Evid. 412(d)(2), (4). On appellate review, we will disturb a trial court's ruling on the admissibility of evidence only if the lower court abused its discretion. See, e.g., State v. Gray, 960 S.W.2d 598, 606 (Tenn. Crim. App. 1997).

In the present case, the defendant filed two notices under Rule 412(d) seeking introduction of evidence of (1) the victim's sexual behavior with her live-in boyfriend earlier on the day of the rape, and (2) three instances of consensual sexual behavior between the victim and the defendant in 1976, 1993 and 1996. At the hearing, the victim acknowledged having had sexual relations with her boyfriend several hours before the rape. Contrary to the defendant's testimony at that hearing, however, she denied that she had ever had consensual sex with the defendant. The trial court ruled that all of the evidence except the alleged 1976 consensual encounter would be admissible. In excluding evidence of the alleged 1976 encounter, the court recited two considerations it found determinative. First, the court ruled that the remoteness of this event rendered it irrelevant. Second, the court found that the victim was incapable of consent under the law at the time of this alleged encounter in that she was sixteen, while the defendant was 26. In other words, this provides a second basis for irrelevance. By finding the evidence lacking in relevance, the court implicitly found that the unfair prejudice to the victim which would result from the admission of this evidence outweighed its probative value.

We see no abuse of discretion in this ruling. The alleged 1976 event was 21 years prior to the incident on trial, whereas the alleged 1993 and 1996 encounters preceded the rape by only four years and two months, respectively. On balance, we see no abuse of discretion. Prejudice to the victim in admitting evidence of her alleged sexual behavior 21 years earlier when she was sixteen years old would be great, and the probative value on the issue of consent of an alleged

encounter 21 years before the rape is marginal, at best.[7] This is particularly the case where the court allowed admission of two more contemporaneous alleged encounters.

In reaching this conclusion, we are unpersuaded by the defendant's argument that this evidence should have been admitted to show that the victim had known the defendant for a long period of time. The victim admitted in her trial testimony that she had known the defendant since she was about fourteen. In any event, we fail to see how the victim's long-standing acquaintance with the defendant is probative of the issue of consent. Further, we have rejected the defendant's claim that if the victim denied the alleged 1976 encounter, he should have been allowed to impeach her victim's credibility on the theory that if she would lie about the 1976 event, she would likewise be capable of fabricating the rape claim. As discussed above, any probative value of the evidence for that purpose is outweighed by the danger of unfair prejudice to the victim.

## IX

Finally, we address the defendant's sentencing issues. He alleges that the trial court improperly sentenced him as a Range III offender because the state had not given proper notice of intent to seek enhanced range punishment. Further, he complains that the maximum, 60-year sentence is too great where there was a mitigating factor present.

### A. Notice

First, the defendant argues that he cannot be classified above Range I because the state failed to give adequate notice that it was seeking enhanced punishment. The notice filed by the state is captioned "Notice of Intent to Seek Enhanced Punishment and To Inquire About Prior Convictions If Defendant Elects to Testify." The body of the notice lists four dates of prior convictions encompassing a total of six convictions and gives the length of sentence and the consecutive or concurrent imposition of those sentences in relation to each other. The pleading "gives notice to the defendant of its intention to [impeach the defendant with his prior convictions if he testifies] and to file as aggravating factors for enhancement in sentencing should there be a verdict of guilty in the present charges."

The content of the notice insofar as it details the prior convictions complies with the relevant rule and statute requiring the filing a notice of intent to seek enhanced range classification. See generally Tenn. Code Ann. § 40-35-202(a) (1997); Tenn. R. Crim. P. 12.3(a). The question, then, is whether the content of the notice is misleading. We hold that it is not. Although the notice is not a model of clarity, the caption combined with the content of the notice reasonably should have

---

[7]Although not a determinative factor, technically, the 1976 encounter, if it occurred, may have been statutory rape. See Tenn. Code Ann. § 39-3706 (repealed 1979). Although at odds with the trial court's finding that the victim was incapable of consenting at the time of her minority, that the alleged encounter was statutory rape does not mean that the victim was incapable of consenting. See, e.g., State v. Ealey, 959 S.W.2d 605, 611 (Tenn. Crim. App. 1997) ("statutory rape contemplates circumstances in which the sexual relations are admittedly consensual").

put the defendant on notice that the state was seeking enhanced range classification.[8] Moreover, the notice was sufficiently clear to shift the burden to the defendant to inquire about any ambiguities he perceived. See State v. Adams, 788 S.W.2d 557 (Tenn. 1990). Furthermore, the defendant has not demonstrated any prejudice which befell him as a result of the allegedly defective notice.[9] See State v. Debro, 787 S.W.2d 932, 934 (Tenn. Crim. App. 1989).

### B. Length of Sentence

Finally, the defendant claims that the trial court failed to afford him some relief from a maximum, sixty year sentence due to the presence of one mitigating factor for prior military service.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. §40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). "The burden of showing that the sentence is improper is upon the appellant." Id. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo*. Id. If appellate review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5)

---

[8]In addition to the caption and content of the notice, there are at least three additional factors supporting our conclusion. First, the notice was filed pretrial as required for notices of this nature. See Tenn. Code Ann. § 40-35-202(a) (1997); Tenn. R. Crim. P. 12.3(a). In contrast, the trial court may require filing of statements of enhancement and mitigating factors after a finding of guilt. See Tenn. Code Ann. § 40-35-202(b) (1997). Thus, the timing of the notice tends to indicate that it was a notice of intent to seek enhanced range classification. Second, the state later filed a separate "Notice of Enhancement Factors" with entirely different content. If the defendant misconstrued the first notice as one in which the state was seeking the application of enhancement factors, rather than enhanced range sentencing, the filing of the second notice should have cured any confusion. Third, the matter of whether the defendant qualified as a repeat violent offender subject to imprisonment for life without parole was thoroughly litigated in the trial court. See Tenn. Code Ann. § 40-35-120 (1997) (repeat violent offender sentencing). In light of the state's various filings in this case, it strains credulity for the defendant to argue that he reasonably believed that the state sought repeat violent offender sentencing, but barring that, did not intend to seek enhanced range classification if he was convicted.

[9]For example, due to an inadequate or misleading notice, a defendant might not have witnesses present at the sentencing hearing who could controvert the state's claim of applicable prior convictions.

evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §40-35-210(a), (b) (1997); Tenn. Code Ann. §40-35-103(5) (1997); State v. Holland, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

In the present case, the defendant does not claim that the trial court misapplied enhancement or mitigating factors; his only complaint is with the weight afforded the mitigating factor found by the court. Moreover, the record reflects that the court considered the relevant matters and made appropriate findings. As such, the trial court's determination is afforded the presumption of correctness. See Tenn. Code Ann. §40-35-401(d) (1997).

Where our review is *de novo* accompanied by the presumption of correctness, our function is not to reweigh the enhancement or mitigating factors. See Fletcher, 805 S.W.2d at 789. Further, where, as here, the trial court has afforded great weight to the enhancement factors, this may "be sufficient, not only to elevate the sentence to the maximum ceiling, but also to firmly embed the sentence in the ceiling" despite the presence of mitigating factors. See State v. Samuel D. Braden, No. 01C01-9610-CC-00457, slip op. at 14 (Tenn. Crim. App., Nashville, Feb. 18, 1998); see also State v. Pike, 978 S.W.2d 904, 928 (Tenn. 1998) (appendix). Thus, in the present case, the trial court was not required to reduce the sentence below the maximum simply because there was a mitigating factor. The sentence imposed was not improper.

For these reasons, we reject the defendant's claims of entitlement to relief. The judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE